**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

BASIL V GREGOROVICH, PLAINTIFF )
)
V. )
)
EI DUPONT DE NEMOURS, DEFENDANT )
) **CIVIL ACTION NO.**_____
CHARLES O. HOLIDAY, DEFENDANT )
)
STACEY J. MOBLEY, DEFENDANT )

## COMPLAINT

1.  This action is brought pursuant to Employee Retirement Income Security Act (ERISA), Title 29 - Labor, Chapter 18-Employee Retirement Income Security Program . For relief related to pension amount granted by E.I. Du Pont de Nemours, jurisdiction exists by virtue of Title 29, Chapter 18, Subchapter II, § 1132 Civil Enforcement.

2.  Plaintiff resides at 7 Zachary Court, Wilmington, Delaware, 19803-3967, Phone No. 302-764-7882, Email: gregorov@gmail.com

3.  Defendant is located at 1007 Market Street, Wilmington, Delaware, 19898, Phone No. 302-774-1000.

4.  The alleged pension miscalculation started July 31, 2004

5.  The alleged miscalculation is continuing

6.  Plaintiff prays for the following relief:

    a.  Payment of pension amount $ 2,112.00, owed from July 31, 2004 to June 30, 2008.

    b.  Accrued interest on pension amount owed $ 88.40

.

c. Payment of pension amount of $ 44.00 per month from July 31, 2008 until June 30, 2037, $ 15,312.00

d. Payment of penalty of $ 435,600.00

e. ERISA penalty for failure to provide pension plan details for 634 days is $ 63,400.00

f. Total amount sought in this action is $ 516,512.40.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: *June 26, 2008*

_____
Signature of Plaintiff

Basil V Gregorovich

7 Zachary Court

Wilmington, DE, 19803-3967

Phone: 302-764-7882

Email: gregorov@gmail.com

2

BASIL V GREGOROVICH, PLAINTIF V.  EI DUPONT DE NEMOURS, DEFENDANT

## Details of Complaint

### 6 a    Pension Calculation

The pension the plaintiff receives from Dupont is $ 4,767.00 per month (Exhibit A). Note that early payments were $ 4,760.00 which was readjusted to $ 4767.00 after 8 months for reasons unrelated to the present complaint.

The portions of the DuPont pension plan that deal with pension calculation are attached (Exhibit B).

- Section IV-A, subsection 2(b), page 2 shows the appropriate calculation method:
  " 1.5% of Average Monthly Pay multiplied by Service, minus 50% of
          Primary Social Security Benefit (PSSB)"
- The definition of PSSB is in Section IX-A subsection 4 on page 21. and includes the statement
  "….in accordance with the Federal Social Security Act in effect on January 1 of the year of retirement….. "

The pension shortfall results from the DuPont miscalculation of the PSSB which differs from the

actual PSSB paid by Social Security (Exhibit C). You will note that the Social Security

calculation of $ 1775.00 was for payment of PSSB starting on Jan 14th 2004, the year of

retirement. In addition Social Security did a second calculation that the plaintiff received in June

2004 (Exhibit C-2). This attachment confirms the Primary Social Security Benefit (PSSB) to be

$1,775.00 as calculated by the Social Security Administration in June 2004 for July payment, the

time when the plaintiff 's pension commenced. Note that in Exhibit C-2 subtracting the medical

payment of $66.60 from $1775.00 gives $ 1,708.40, which rounded up is $ 1,709.00, the amount

deposited to the plaintiff's bank account by Social Security. Dupont estimated the plaintiff's

Social Security payment to be $1863.00 (Exhibit D). This difference of $ 88.00 results in

payment to the plaintiff of $44.00 less in pension payment per month. The period from July 2004

to June 2008 is 48 months so the pension shortfall is 48 times $44.00 for a total of $2112.00.

**6b    Interest Calculation**

Interest was calculated using the Legal interest rate of 2.05%, the 1 year Constant Maturity

Treasury Yield reported June 2, 2008 (Title 28,Part V, Chapter 125, § 1961).

The total amount of $88.40 was calculated using an Excel Spreadsheet (Exhibit E).


**6c    Future Pension**

The amount of future pension owed is $15,312.00, calculated using a life expectancy of 29 years.

United States Life Expectancy Tables compiled by the Department of Health and Human

Services project a life expectancy of 13.4 years for a Caucasian male 70 years old (Note this data

was compiled in 2003, the latest available), (Exhibit F). All 70 year olds are included in this data.

Some of these individuals are already in advanced stages of cancer or heart disease, some have

damaging lifestyles such as smoking or heavy use of alcohol. The Internal Revenue Service

(IRS) another branch of the Federal Government also publishes a longevity table that can be

derived from the requirement for a Required Minimum Distribution (RMD) for Individual

Retirement Accounts (Exhibit G). In this table an individual of 70.5 years uses 27.4 years for the

RMD payout. The IRS thus expects complete payout in 27.4 years for a life expectancy of at

least 97.9 years.

It is possible to get a personalized estimate of life expectancy through a number of programs on

the Internet. The plaintiff has selected a Microsoft program, that can be accessed at

http://moneycentral.msn.com/investor/calcs/n_expect/main.asp. This program takes into account

family health history (such as cancer, heart disease, diabetes, asthma), personal health history,

diet, exercise, blood pressure, smoking, alcoholic consumption, and use of seat belts when

driving (Exhibit H). In addition as a former Safety Officer at DuPont the plaintiff has been

4

committed to a strongly safety oriented lifestyle. This calculation projects a life expectancy for the plaintiff of 29 years. It seems reasonable for the plaintiff to select this personal longevity calculation. The total amount of pension owed for this period would be 29 years times 12 months times $44.00 which is $15,312.00.

## 6d    Penalty

The plaintiff became aware of a possible error in the pension calculation as soon as the pension information was received during the month prior to retirement. At that time the plaintiff contacted DuPont Human Resources and asked for a review of the pension calculation. Human Resources officials asserted the calculations were correct without any apparent attempt to determine the reason for the discrepancy between the Du Pont and Social Security Administration calculation of PSSB. DuPont was given a second opportunity to correct this possible pension calculation error during an appeal. The plaintiff entered the formal appeal process receiving a rejection on Jul 19, 2004 (Exhibit I).

The plaintiff then appealed that decision in a letter dated September 2, 2004 (Exhibit J). After a protracted 2 year period the appeal was denied. and plaintiff received a final rejection on June 26, 2006 (Exhibit K). The plaintiff draws your attention to the following in Exhibit K:

- 2nd Page, 1st paragraph " We do not have a copy of the statement that you received from the Social Security Administration, so we do not know how they came up with the pension amount of $ 1775.00 "

- 2nd Page, 2nd paragraph " Regardless of the Social Security Administration calculations, the Plan benefit is calculated based on DuPont's calculation of the Social Security Primary Insurance Amount ".

5

A copy of the Social Security statement was supplied with the appeal dated July 1, 2004 although due to a change in pension administration it was not forwarded to the Appeals Committee. Apparently the appeals process was completed without an examination of this evidence, available from the plaintiff, indicating a lack of diligence in the appeals process. It would seem appropriate that the Social Security Administration would determine the correct value of the plaintiff's Primary Social Security Administration benefit (PSSB). The plaintiff sees no language in the DuPont retirement plan to support the claim the DuPont calculation supercedes the Social Security Administration calculation.

In addition DuPont was given an opportunity to have judgment proceed in state small claims court, which would have avoided penalties because of claim limits. They chose instead to challenge the jurisdiction of the court thus forcing action to be taken in Federal Court. For these reasons it seems appropriate to seek penalty of 25 times the claim which is $435, 600.00.

**6e    ERISA Penalty**

Dupont did not respond to requests for the pension documents ( Exhibit L, Exhibit M) for 634 days (from July 31, 2004 to April 26,2006). This is particularly egregious since it was not until receipt of those documents that the plaintiff could determine if a pension calculation error had occurred. The ERISA penalty for failure to provide pension plan details is $100.00 per day so the allowed penalty is a total of $63,400.00

**6f    Total Claim**

The total claim for amounts owed from July 2004 to December 2007, Interest on the amount owed, future pension amount, penalty for denying pension amount and ERISA penalty is a total claim of $ 516,512.40.

6



STATE STREET.
For Everything You Invest In™
RETIREE SERVICES
P.O. BOX 550868
JACKSONVILLE, FL 32255-0868

SSBADT3R J26464 0001 370       AR003 CRP10
F0G4    281 SP HVOL      281    281    T    I  I........

BASIL V GREGOROVICH
7 ZACHARY CT
WILMINGTON DE 19803-3967

FP

ACCOUNT ID DUPONT--DPQ10                              PERIOD BEGINNING:
PLAN NAME   E I DU PONT DE NEMOURS & CO INC RETIREMENT PLANS    PERIOD ENDING:

## PAYEE INFORMATION

| PAYMENT DATE | CHECK NO. | PAYEE SOC. SEC. NO. | NET PAYMENT |
|---|---|---|---|
| JULY 30, 2004 | | 172-44-**** | 4,651.50 |

## PAYMENT DETAIL

| PAYMENT SOURCES | Current | Year-To-Date | DEDUCTIONS | Current | Year-To-Date |
|---|---|---|---|---|---|
| REG    DP | 4,760.00 | 4,760.00 | MEDICAL | 108.50 | 108.50 |
| GROSS PAYMENT | 4,760.00 | 4,760.00 | TOTAL DEDUCTIONS | 108.50 | 108.50 |

DEPOSITED IN BANK
ROUTING NO 231176994
ACCOUNT NO 9798

DATE   07/30/2004   PLAN NAME   E I DU PONT DE NEMOURS & CO INC RETIREMENT PLANS

FOUR THOUSAND SIX HUNDRED FIFTY-ONE DOLLARS 50 CENTS

BASIL V GREGOROVICH
7 ZACHARY CT
WILMINGTON DE 19803-3967

| AMOUNT |
|---|
| $*****4,651.50 |

ACCOUNT ID
DUPONT--DPQ10

STATE STREET.
For Everything You Invest In™
BOSTON, MASSACHUSETTS 02101

**ADVICE OF DEPOSIT NON-NEGOTIABLE**



 **STATE STREET**
For Everything You Invest In™
RETIREE SERVICES
P.O. BOX 550868
JACKSONVILLE, FL 32255-0868

FOR PENSION INQUIRIES/CHANGES, CALL
DUPONT CONNECTION
AT 1-800-775-5955, 8 A.M. - 5 P.M. EST.
http://resources.hewitt.com/dupont

158+0*3* JI9465 00E+34300    AR003 CRP10
1252   4 3* 0*4 11% I02 MI    24I3*   24I3*   .    II -2······

BASIL V GREGOROVICH
7 ZACHARY CT
WILMINGTON DE 19803-3967

ACCOUNT ID DUPONT--DPQ10                                          PERIOD BEGINNING:
PLAN NAME  E I DU PONT DE NEMOURS & CO INC RETIREMENT PLANS       PERIOD ENDING:

## PAYEE INFORMATION

| PAYMENT DATE | CHECK NO. | PAYEE SOC. SEC. NO. | NET PAYMENT |
|---|---|---|---|
| MAY 31, 2006 | | XXX-XX-3748 | 4,603.00 |

## PAYMENT DETAIL

| PAYMENT SOURCES | Current | Year-To-Date | DEDUCTIONS | Current | Year-To-Date |
|---|---|---|---|---|---|
| REG    DP | 4,767.00 | 23,835.00 | MEDICAL | 129.50 | 647.50 |
| | | | DENTAL | 34.50 | 172.50 |
| *GROSS PAYMENT* | 4,767.00 | 23,835.00 | *TOTAL DEDUCTIONS* | 164.00 | 820.00 |

DEPOSITED IN BANK
ROUTING NO 231176994
ACCOUNT NO 9798

DATE  05/31/2006    PLAN NAME   E I DU PONT DE NEMOURS & CO INC RETIREMENT PLANS

FOUR THOUSAND SIX HUNDRED THREE DOLLARS NO CENTS

BASIL V GREGOROVICH
7 ZACHARY CT
WILMINGTON DE 19803-3967

| AMOUNT |
|---|
| $*****4,603.00 |

ACCOUNT ID
DUPONT--DPQ10

 **STATE STREET**
For Everything You Invest In™
BOSTON, MASSACHUSETTS 02101

**ADVICE OF DEPOSIT NON-NEGOTIABLE**



*EXHIBIT A*



**STATE STREET.**
*For Everything You Invest In*
RETIREE SERVICES
P.O. BOX 550868
JACKSONVILLE, FL 32255-0868

SSBAD75R J26464 0001 370      AR003 DRP10
FGC4    281 SP HNDL    281    281    1    1.1·······

BASIL V GREGOROVICH
7 ZACHARY CT
WILMINGTON DE 19803-3967

FP

ACCOUNT ID DUPONT--DPQ10
PLAN NAME  E I DU PONT DE NEMOURS & CO INC RETIREMENT PLANS

PERIOD BEGINNING:
PERIOD ENDING:

## PAYEE INFORMATION

| PAYMENT DATE | CHECK NO. | PAYEE SOC. SEC. NO. | NET PAYMENT |
|---|---|---|---|
| JULY 30, 2004 | | ██████████·· | 4,651.50 |

## PAYMENT DETAIL

| PAYMENT SOURCES | Current | Year-To-Date | DEDUCTIONS | Current | Year-To-Date |
|---|---|---|---|---|---|
| REG    DP | 4,760.00 | 4,760.00 | MEDICAL | 108.50 | 108.50 |
| GROSS PAYMENT | 4,760.00 | 4,760.00 | TOTAL DEDUCTIONS | 108.50 | 108.50 |

DEPOSITED IN BANK
ROUTING NO 231176994
ACCOUNT NO 9798

DATE   07/30/2004    PLAN NAME    E I DU PONT DE NEMOURS & CO INC RETIREMENT PLANS

FOUR THOUSAND SIX HUNDRED FIFTY-ONE DOLLARS 50 CENTS

BASIL V GREGOROVICH
7 ZACHARY CT
WILMINGTON DE 19803-3967

| AMOUNT |
|---|
| $*****4,651.50 |

ACCOUNT ID
DUPONT--DPQ10



**STATE STREET.**
*For Everything You Invest In*
BOSTON, MASSACHUSETTS 02101

**ADVICE OF DEPOSIT NON-NEGOTIABLE**





STATE STREET.
*For Everything You Invest In™*
RETIREE SERVICES
P.O. BOX 550868
JACKSONVILLE, FL 32255-0868

FOR PENSION INQUIRIES/CHANGES, CALL
DUPONT CONNECTION
AT 1-800-775-5955, 8 A.M. - 5 P.M. EST.
http://resources.hewitt.com/dupont

BASIL V GREGOROVICH
7 ZACHARY CT
WILMINGTON DE 19803-3967

ACCOUNT ID DUPONT--DPQ10                                      PERIOD BEGINNING:
PLAN NAME  E I DU PONT DE NEMOURS & CO INC RETIREMENT PLANS   PERIOD ENDING:

## PAYEE INFORMATION

| PAYMENT DATE | CHECK NO. | PAYEE SOC. SEC. NO. | NET PAYMENT |
|---|---|---|---|
| MAY 31, 2006 | | XXX-XX-3748 | 4,603.00 |

## PAYMENT DETAIL

| PAYMENT SOURCES | Current | Year-To-Date | DEDUCTIONS | Current | Year-To-Date |
|---|---|---|---|---|---|
| REG    DP | 4,767.00 | 23,835.00 | MEDICAL | 129.50 | 647.50 |
| | | | DENTAL | 34.50 | 172.50 |
| *GROSS PAYMENT* | 4,767.00 | 23,835.00 | *TOTAL DEDUCTIONS* | 164.00 | 820.00 |

DEPOSITED IN BANK
ROUTING NO 231176994
ACCOUNT NO 9798

DATE  05/31/2006   PLAN NAME   E I DU PONT DE NEMOURS & CO INC RETIREMENT PLANS

FOUR THOUSAND SIX HUNDRED THREE DOLLARS NO CENTS

BASIL V GREGOROVICH
7 ZACHARY CT
WILMINGTON DE 19803-3967

| AMOUNT |
|---|
| $*****4,603.00 |

STATE STREET.
*For Everything You Invest In™*
BOSTON, MASSACHUSETTS 02101

ACCOUNT ID
DUPONT--DPQ10

**ADVICE OF DEPOSIT NON-NEGOTIABLE**



EXHIBIT B

(DUPONT)

Board of Benefits and Pensions

*Andrew F. Lesser B-4440*
*Benefit Administration Services*
*1007 Market Street*
*Wilmington, DE 19898*

April 26, 2006

Mr. Basil V. Gregorovich
7 Zachary Court
Wilmington, DE 19803-3967

Re: Appeal of PSSB Calculation Results

Dear Mr. Gregorovich:

This is to confirm that Board of Benefits and Pensions (the "Board") of E. I. du Pont de Nemours and Company Inc. has received your letter requesting an appeal of the calculation of Primary Social Security Benefits used in the calculation of your benefits from the DuPont Pension and Retirement Plan. It appears that your original 2nd level appeal was received at DuPont Connection just as we were switching service providers, and your letter was not forwarded to the new provider. We regret the delay in considering your appeal.

The Board will review the information provided as well as supplemental information from Benefits Administration Services, and will render a decision at its regularly scheduled meeting, if our review is complete by that time. You will be notified of the Board's decision within 30 days of the meeting date. If more time is needed to review the case, you will be notified. You may submit any additional information that becomes available until the meeting date.

You have the right under ERISA to view the Plan document in our offices. If you wish to receive a copy of the document, we may charge you for copying costs. In light of the delay in considering your appeal, we will waive the copying charge in this case. A copy of the Plan document is enclosed.

Please address any further correspondence regarding this appeal to my attention at the following address:

> E. I. du Pont de Nemours & Company
> Brandywine 4440
> 1007 Market Street
> Wilmington, DE 19898

Sincerely,

Andrew F. Lesser
DELEGATE OF THE BOARD OF BENEFITS AND PENSIONS

/afl

**PENSION**

**AND**

**RETIREMENT**

**PLAN**

Originally Adopted - September 1, 1904

Last Amended – October 31, 2002

E. I. du Pont de Nemours and Company

## PREAMBLE

Effective as of December 20, 2001, E. I. du Pont de Nemours and Company amends and restates the Pension and Retirement Plan originally adopted September 1, 1904 and last amended June 30, 2001.

The provisions of Title 1 of the Plan, entitled Benefits for Persons employed by E. I. du Pont de Nemours and Company, shall apply only to the employees of E. I. du Pont de Nemours and Company and participants in the following defined benefit pension plans which have been merged into the Plan: DuPont Agrichemicals Caribe, Inc. Pension and Retirement Plan, the Crosfield Electronics Limited Retirement Plan, the DuPont Specialty Imaging Media Inc. Pension Plan #086 and the DuPont Specialty Grains Retirement Plan.

The provisions of Title 2 of the Plan, entitled Benefits for Persons employed by Conoco Inc. which were added to the Plan effective as of July 1, 1993 when the Plan and the Retirement Plan of Conoco, Inc. were merged, shall consist of the provisions of the Retirement Plan of Conoco, Inc. as amended to reflect the divestiture of Conoco, Inc. on August 6, 1999 and transfer of assets to the Retirement Plan of Conoco, Inc.

The provisions of title 3 of the Plan, effective as of July 1, 1996, shall apply to the employees of the Sentinel Transportation Company LLC.

The Plan, as restated, is intended to be a defined benefit plan qualified under Section 401(a) of the Internal Revenue Code of 1986, as amended, and to satisfy the requirements of the Employee Retirement Income Security Act of 1974, as amended.

PENSION AND RETIREMENT PLAN.................................................................................................1

I.     PURPOSE...........................................................................................................................1
II.    ADMINISTRATION...........................................................................................................1
III.   NORMAL RETIREMENT AGE.........................................................................................1
IV.    PENSIONS FOR RETIRED EMPLOYEES .......................................................................1
       A.   Normal Retirement...................................................................................................1
       B.   Early Retirement.......................................................................................................2
       C.   Incapability Retirement ............................................................................................3
       D.   Optional Retirement .................................................................................................4
       E.   Income-Leveling Option...........................................................................................5
       F.   Application for Pension.............................................................................................5
       G.   Transfers to Affiliates...............................................................................................5
       H.   Consent to Distribution.............................................................................................6
V.     VESTED RIGHT TO DEFERRED PENSION ...................................................................6
       A.   Eligibility..................................................................................................................6
       B.   Amount of Deferred Pension.....................................................................................6
       C.   Spouse Benefit Coverage..........................................................................................7
       D.   Deferred Pensions of Employees Terminated Prior to January 1, 1985.................10
       E.   Application for Deferred Pension............................................................................10
VI.    PAYMENTS TO SURVIVORS.........................................................................................10
       A.   Company-Paid Survivor Benefits............................................................................10
       B.   Post-Retirement Joint and Survivor Options ..........................................................12
       C.   Spouse Benefit Option.............................................................................................13
VII.   REEMPLOYMENT..........................................................................................................15
VIII.  NONASSIGNMENT.........................................................................................................15
IX.    DEFINITIONS AND GENERAL CONDITIONS.............................................................16
       A.   Definitions...............................................................................................................16
       B.   Accrued Benefit.......................................................................................................23
       C.   Payments Rounded to Next Higher Full Dollar......................................................23
       D.   Benefit Limitations..................................................................................................23
       E.   Pension Plans of Other Companies.........................................................................23
       F.   Non-Duplication of Benefits ...................................................................................25
       G.   No Reduction in Benefits ........................................................................................25
       H.   Payment of Pension and Required In-Service Distribution .....................................26
       I.   Upward Adjustment in Benefits ..............................................................................27
       J.   Management of Plan and Assets...............................................................................27
       K.   Right to Modify Plan...............................................................................................28
       L.   Transfer of Excess Pension Assets to Health Benefits Account..............................28
       M.   Military Service Credit............................................................................................28
X.     TEMPORARY RETIREMENT/TERMINATION INCENTIVE PROGRAM ...................29
XI.    VOLUNTARY SEPARATION/RETIREMENT INCENTIVE PROGRAM .....................30
XII.   TEMPORARY PENSION SYSTEM.................................................................................77
XIII.  OPTIONAL RETIREMENT IN CONNECTION WITH CERTAIN BUSINESS  TRANSACTIONS.....................85
XIV.   PENSION ADJUSTMENT IN CONNECTION WITH CERTAIN BUSINESS TRANSACTIONS ..........86
       Appendices.......................................................................................................................88

# TITLE 1

## BENEFITS FOR PERSONS EMPLOYED BY
## E. I. DU PONT DE NEMOURS AND COMPANY

## PENSION AND RETIREMENT PLAN

I.  PURPOSE

The purpose of this Plan is to provide for the retirement of employees and, under the conditions set forth below, to provide an employee who is retired or otherwise terminated with pension rights that take into account the length of his service and the pay he received during his employment with the Company.

II.  ADMINISTRATION

The administration of this Plan is vested in the Board of Benefits and Pensions appointed by the Company. The Board may adopt such rules, or delegate to one or more persons its authority to make initial determinations, as it may deem necessary for the proper administration of the Plan. The Board of Benefits and Pensions retains discretionary authority to determine eligibility for benefits hereunder and to construe the terms and conditions of the Plan. The decision of the Board in all matters involving the interpretation and application of the Plan shall be final. The Company shall have authority to control and manage the Plan and the Board of Directors shall have authority to control and manage the assets of the Pension Trust Fund as set forth in paragraph J of Section IX.

III.  NORMAL RETIREMENT AGE

The normal retirement age under this Plan is the later of age 65 or, for employees who commence participation in the Plan after age 60, the 5th anniversary of the time Plan participation commenced. The Company reserves the right to require an employee to accept retirement at or after age 65 where permitted by law.

IV.  PENSIONS FOR RETIRED EMPLOYEES

An employee who is eligible for retirement may retire at any time. An employee who retires on or after January 1, 1985 and who meets the respective eligibility requirements specified in paragraphs A through D of this Section will be entitled to a monthly pension payment beginning with the month following that in which he retires and ending with the month in which he dies. An employee who retires at other than month end will receive a pro rata pension payment for the partial month. The pro rata amount will be included with the first monthly pension payment covering the month following that in which he retires.

A.  Normal Retirement

(1)  Eligibility

An employee will be eligible for Normal Retirement after reaching age 65 with at least 15 years of service.

(2) Amount of Pension

The amount of monthly pension payable to an employee eligible for retirement under this paragraph will be the greatest of

(a) 1.2% of Average Monthly Pay multiplied by Service;

(b) 1.5% of Average Monthly Pay multiplied by Service, minus 50% of Primary Social Security Benefit;

or

(c) $9 multiplied by Service, plus 10% of Average Monthly Pay:

provided that the amount determined under (a) or (b) above may not be greater than an amount which, when added to the employee's full Primary Social Security Benefit, will equal 100% of the employee's Average Monthly Pay; provided further that the amount determined under (a), (b), or (c) above shall be reduced to reflect any pre-retirement spouse benefit coverage as provided under paragraph C of Section V and paragraph C of Section VI.

Average Monthly Pay, Service, and Primary Social Security Benefit are defined in paragraphs A(2) through (4) of Section IX.

B.   Early Retirement

(1)   Eligibility

An employee will be eligible for Early Retirement after reaching age 50 and prior to reaching age 65 with at least 15 years of service.

(2)   Amount of Pension

The amount of monthly pension payable to an employee eligible for retirement under this paragraph will be determined in the same manner as a Normal Retirement pension (paragraph A(2) of this Section) except that the result will be multiplied by the applicable percentage factor from the Early Retirement table.

## PERCENTAGE FACTORS FOR EARLY RETIREMENT PENSION

| AGE AT COMMEN-CEMENT OF PAYMENT | 15 THROUGH 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 AND OVER |
|---|---|---|---|---|---|---|---|---|
| | | | | **SERVICE YEARS** | | | | |
| 65 | 100% | | | | UNREDUCED PENSION | | | |
| 64 | 95 | 100% | | | | | | |
| 63 | 90 | 95 | 100% | | | | | |
| 62 | 85 | 90 | 95 | 100% | | | | |
| 61 | 80 | 85 | 90 | 95 | 100% | | | |
| 60 | 75 | 80 | 85 | 90 | 95 | 100% | | |
| 59 | 70 | 75 | 80 | 85 | 90 | 95 | 100% | |
| 58 | 65 | 70 | 75 | 80 | 85 | 90 | 95 | 100% |
| 57 | 60 | 65 | 70 | 75 | 80 | 85 | 90 | 95 |
| 56 | 55 | 60 | 65 | 70 | 75 | 80 | 85 | 90 |
| 55 | 50 | 55 | 60 | 65 | 70 | 75 | 80 | 85 |
| 54 | 50 | 50 | 55 | 60 | 65 | 70 | 75 | 80 |
| 53 | 50 | 50 | 50 | 55 | 60 | 65 | 70 | 75 |
| 52 | 50 | 50 | 50 | 50 | 55 | 60 | 65 | 70 |
| 51 | 50 | 50 | 50 | 50 | 50 | 55 | 60 | 65 |
| 50 | 50 | 50 | 50 | 50 | 50 | 50 | 55 | 60 |

**For intermediate age and service combinations, the percentage factor will be interpolated from the above.**

    (3)    Amount of Pension in Certain Circumstances

For an employee who terminates on or after October 15, 1994, under the circumstances specified in Section IV.D. (1)(c)(i), (ii), or (iii), the amount of Normal Retirement pension will be not less than the employee's benefit accrued on October 15, 1994, reduced under the provisions of Section IV.D.(2) at the employee's age and service at the point of termination.

C.    Incapability Retirement

    (1)    Eligibility

An employee may be retired by the Company if the Board of Benefits and Pensions finds that he has become, for any reason, permanently incapable of performing the duties of his position with the degree of efficiency required by the Company, and he has at least 15 years of service.

    (2)    Amount of Pension

The amount of monthly pension payable to an employee eligible for retirement under this paragraph will be determined in the same manner as a Normal Retirement pension (paragraph A(2) of this Section).

(3)     Incapability Supplement

Such employee will also receive a supplement equal to the greater of (a) 50% of Primary Social Security Benefit as defined in Section IX, or (b) $90 a month, such amount to be paid until the earliest date on which he becomes eligible for an old-age benefit or unless he is receiving a disability benefit under the Federal Social Security Act.

D.    Optional Retirement

(1)    Eligibility

(a)    An employee will be eligible for Optional Retirement after reaching age 50 with at least 15 years of service if his employment would otherwise be involuntarily terminated for reasons other than discharge for dishonesty, insubordination or other misconduct.

(b)    An employee will be eligible for Optional Retirement after reaching age 45 and prior to reaching age 50 with at least 25 years of service if his employment would otherwise be involuntarily terminated due to lack of work. The length of service required for eligibility shall be reduced by two months, or a proportionate part thereof, for each month or portion thereof which has elapsed since the employee reached age 45.

(c)    Effective October 15, 1994, an employee will not be eligible for Optional Retirement under the following circumstances but will be eligible for the right described in Section V.A.(2):

(i)    the employee is offered and accepts employment with the buyer or joint venture at the site in conjunction with a sales agreement between the Company and a buyer of company assets or in conjunction with the formation of a joint venture; or

(ii)    the employee is offered and refuses employment with the buyer or joint venture at the site in conjunction with a sales agreement between the Company and a buyer of Company assets or in conjunction with the formation of a joint venture unless the offer is less than 80% of the employee's Company wage or salary level or the rejection results in a job for another employee who would otherwise have been terminated for lack of work.

(iii)    the employee is transferred to or employed by a wholly-owned subsidiary of the Company, or is transferred to or employed by a subsidiary of the Company or a joint venture in which the Company participates that recognized Company service.

(d)    Effective April 15, 1997, an employee will not be eligible for Optional Retirement under the following circumstances but will be eligible for the right described in Section V.A.(2):

4

      (i)     the employee is offered and accepts similar employment at the site with a service provider which is providing or will provide services to the Company pursuant to a service agreement with the Company; or

      (ii)    the employee is offered and refuses similar employment at the site with a service provider which is providing or will provide services to the Company pursuant to a service agreement with the Company, unless the offer is less than 80% of the employee's Company wage or salary level or the rejection results in a job for another employee who would otherwise have been terminated for lack of work.

    (2)    Amount of Pension

The amount of monthly pension payable to an employee eligible for retirement under this paragraph will be determined in the same manner as a Normal Retirement pension (paragraph A(2) of this Section) except that the result will be reduced by five-twelfths of 1% for each month by which the month of his retirement precedes the earliest month in which, with continued employment, he would have become eligible for an unreduced pension under the Normal or Early Retirement provisions (paragraph A or B) of this Section.

E.   Income-Leveling Option

An employee who retires prior to age 62 under the Early or Optional Retirement provisions (paragraph B or D) of this Section may elect to have his pension increased prior to age 62 and reduced thereafter, using the investment return rate determined in accordance with Appendix A and the factors in Appendix B, to provide, as far as practicable, a level retirement income before and after Federal Social Security payments begin. In the application of this option, the amount of pension payable after age 62 may not be reduced below $25 per month. This election shall be made in such manner as the Board of Benefits and Pensions may prescribe and may not be changed after the employee's retirement.

F.   Application for Pension

An employee who retires or is about to retire may make application for a pension to the Board of Benefits and Pensions in such manner as the Board may prescribe. Such application may also be submitted on an employee's behalf by the head of his department or by any official of the Company to whom the employee reports.

G.   Transfers to Affiliates

Notwithstanding the foregoing, an employee who has been transferred to an affiliated group company will not be eligible to retire under this Section; provided, however, that an employee who had 15 years of service at the time of such transfer may, should he become incapable within the meaning of Section IV.C of this Plan but not be eligible for incapability or equivalent retirement benefits under the defined benefit pension plan of such Company, be retired under this Plan as though he were an employee of this Company and will be entitled to benefits as prescribed in Section IV.C, including any incapability supplement.

H.  Consent to Distribution

An employee (and when applicable, the employee's spouse) shall consent to any plan distribution (where the present value of the nonforfeitable accrued benefit is in excess of $3,500) which would occur prior to the later of age 62 or normal retirement age.

## V.  VESTED RIGHT TO DEFERRED PENSION

A.  Eligibility

(1)  An employee shall acquire a nonforfeitable right to a deferred pension if his employment within the affiliated group is terminated on or after July 1, 1988 for any reason other than retirement under the provisions of Section IV and (1) he has had at least 5 years of service or (2) he has reached the normal retirement age as set forth in Section III. Such a terminated employee may elect to receive a monthly payment in accordance with the age and service categories as shown in the following table, subject to the provisions of paragraph V.C.

| Years of Service At Termination | Age When Payment May Begin Reduced | Unreduced |
|---|---|---|
| Less than 10 | Not Available | 65 and over |
| 10 through 14 | 60 through 64 | 65 and over |
| 15 through 29 | 50 through 64 | 65 and over |
| 30 or more | 50 through 59 | 60 and over |

Payments may begin with the month following that in which the employee becomes eligible, or any month thereafter, and will end with the month in which he dies. Service performed as a Leased Employee (as defined in Section IX.(A)(1)(g)) shall be recognized in determining whether a Participant has attained 5 or more Years of Service for vesting purposes only.

(2)  An employee who met the age and service requirements of Section IV.D.(1)(b) at his termination prior to age 50 for lack of work but who is not eligible for Optional Retirement pursuant to the requirements of Section IV.D. (1)(c) or (d) will be eligible to receive a monthly payment determined in accordance with Section B.(3) below, beginning with the month following the month in which he terminates and ending with the month in which he dies.

B.  Amount of Deferred Pension

(1)  The amount of unreduced monthly deferred pension payable in accordance with paragraph A(1) of this Section will be determined in the same manner as a Normal Retirement pension (paragraph A(2) of Section IV) except that,in applying paragraph A(2)(c) of Section IV, 2/3% of Average Monthly Pay times Service shall be substituted for 10% of Average Monthly Pay where Service is less than 15 years. The amount of

6

pension payable to an employee transferred to an affiliated group company will be based on his Service and Average Monthly Pay at the time of transfer. An employee who elects to receive reduced payments will have his payments reduced by five-twelfths of 1% for each month by which the first month of such payments precedes the month in which he would have been entitled to receive an unreduced deferred pension payment.

(2) Any reduction in monthly deferred pension will be determined after application is made - after any reduction to reflect spouse benefit coverage under paragraph C of this Section or paragraph C of Section VI prior to commencement of monthly pension payments - and a reduced pension will be paid to the former employee until he dies.

(3) The amount of monthly pension payable in accordance with Section V.A.(2) will be the greater of:

   (i) either the employee's benefit accrued on October 15, 1994, for those employees who terminate on or after October 15, 1994, under the circumstances specified in Section IV.D.(1)(c) or the employee's benefit accrued on April 15, 1997, for those employees who terminate on or after April 15, 1997, under the circumstances specified in Section IV.D.(1)(d), whichever is applicable, reduced under the provisions of Section IV.D.(2) at the employee's age and service at the point of termination; or

   (ii) The employee's vested deferred benefit payable beginning immediately; provided that, if the employee is under age 50, the amount of the employee's monthly benefits otherwise payable at age 50 determined under Section V.B.(1) will be further reduced ½% for each month by which the first month of payments precedes the month after the month of the employee's 50th birthday.

C.  Spouse Benefit Coverage

   (1) An employee who would be entitled to monthly pension payments under paragraph A of this Section if his employment were terminated will have benefit coverage for his spouse prior to the commencement of monthly pension payments. A former employee who is entitled to monthly pension payments under paragraph A of this Section will have benefit coverage for his spouse prior to the commencement of monthly pension payments unless (i) the former employee provides satisfactory evidence that his spouse cannot be located; (ii) he is legally separated or abandoned, pursuant to a court order to that effect; (iii) spousal consent is otherwise not required by regulations issued by the Secretary of the Treasury, or the former employee and spouse specify otherwise in writing in the manner prescribed by the Board of Benefits and Pensions. A former employee may revoke or reelect his coverage at any time beginning with termination of employment and prior to the former employee's death.

   (2) In the event of a covered employee or former employee's death, payments to the spouse will be made as provided below which benefit constitutes the "qualified joint and survivor annuity" as described under IRC Section 417 and is at least as valuable as any other optional form of benefit payable under the Plan at the same time for eligible employees:

      (a) If the employee had attained earliest benefit commencement age, monthly

7

payments will be made to the spouse equal to 50% of the employee's pension calculated under paragraph B of this Section as though he had terminated employment immediately prior to death and elected to have monthly payments commence, and reduced as provided in subparagraph (4) below. Payments to the spouse will begin with the month following that in which the employee dies and end with the month in which the spouse dies.

(b) If the employee had not attained earliest benefit commencement age, monthly payments will be made to the spouse equal to 50% of the employee's

pension calculated under paragraph B as though the employee had terminated employment immediately prior to death and applied for monthly pension payments to commence at earliest benefit commencement age, and reduced as provided in subparagraphs (4) below. Payments to the spouse will begin with the month following that in which the employee would have attained earliest benefit commencement age and end with the month in which the spouse dies.

(c) If the former employee had attained earliest benefit commencement age, monthly payments will be made to the spouse equal to 50% of the former employee's pension calculated under paragraph B of this Section as though he had applied for benefits immediately prior to death and reduced as provided in subparagraphs (3) and (4) below. Payments to the spouse will begin with the month following that in which the former employee dies and end with the month in which the spouse dies.

(d) If the former employee had not attained earliest benefit commencement age, monthly payments will be made to the spouse equal to 50% of the former employee's pension calculated under paragraph B of this Section as though he had applied for benefits at earliest benefit commencement age and reduced as provided in subparagraphs (3) and (4) below. Payments to the spouse will begin with the month following that in which the employee would have attained earliest benefit commencement age and end with the month in which the spouse dies.

(e) For purposes of Section V.C(2) "earliest benefit commencement age" shall mean the earliest age, given the employee or former employee's service, that benefits could commence under the table in Section V.A.

(f) Notwithstanding the foregoing paragraphs, the spouse must consent to any plan distribution, where the accrued benefit is in excess of $3,500, which would occur prior to the time the employee would have attained the latter of age 62 or normal retirement age.

(g) Not less than 30 and not more than 90 days prior to the date that pension payments commence, the former employee shall be provided with a written explanation of:

    (a) Each form of payment available under the Plan along with the respective values.

    (b) Any right of the employee to defer commencement of his retirement income.

    (c) The right of a single employee to elect a form of payment other than the form described in Section V(C)(2).

(d)    The terms and conditions under which a married employee may elect a form of payment other than the form described in V(C)(1).

Notwithstanding the foregoing, the employee may elect in writing to waive the 30-day notice requirement in accordance with applicable Treasury Regulations.

(3)    To provide the monthly 50% payment coverage to the spouse hereunder, a former employee's monthly pension payments will be reduced for coverage after April 1, 1985 as provided below:

## COVERAGE DURING EMPLOYMENT

| Age at Time of Coverage | Charge Per Month of Coverage |
|---|---|
| less than 35 | .0002% |
| 35-44 | .0006% |
| 45-54 | .0060% |
| 55-64 | .0400% |
| 65 and over | .1250% |

## COVERAGE AFTER TERMINATION OF EMPLOYMENT BUT BEFORE COMMENCEMENT OF PENSION PAYMENTS

| Age at Time of Coverage | Charge Per Month of Coverage |
|---|---|
| less than 35 | .004% |
| 35-44 | .007% |
| 45-54 | .025% |
| 55-64 | .055% |
| 65 and over | .125% |

The charge for employment coverage during 1989 for those former employees who did not attain age 35 before January 1, 1989 will not be applied.

For employees terminating employment on or after January 1, 1996, the charge for coverage after termination of employment but before commencement of pension payments will not be applied until the earlier of commencement of pension payments or six months following the termination of employment.

For employees terminating employment on or after April 1, 1985, who have not commenced payment before March 1, 1998, the charge for coverage after termination of employment but before commencement of pension payments will not be applied. The charge will be applied to the pension payments of former employees who have commenced payment or who are deceased before March 1, 1998.

(4)    Unless the employee or former employee and his spouse specify otherwise in writing in the manner prescribed by the Board of Benefits and Pensions at the time he makes his application hereunder, or (i) the employee provides satisfactory evidence that his spouse cannot be located; (ii) he is legally separated or abandoned, pursuant to a court

9

order to that effect; (iii) spousal consent is otherwise not required by regulations issued by the Secretary of the Treasury at the time he makes his application hereunder, his deferred pension as calculated under paragraph B will be reduced using the investment return rate determined in accordance with Appendix A and the factors in Appendix C. A former employee may revoke or re-elect his coverage at any time and any number of times beginning with termination of employment and prior to the date benefit payments commence or in accordance with Treasury Regulations. Payments will be made to the spouse named at application and will begin with the month following that in which the former employee dies and end with the month in which the spouse dies.

(5)  For purposes of this subsection, the term "employee" does not include an active employee with at least 15 years of service or a former employee who had at least 15 years of service upon transfer to an affiliated group company and who (i) is still employed within the affiliated group or (ii) retired from the affiliated group under a provision similar to Section IV.

D.  Deferred Pensions of Employees Terminated Prior to January 1, 1985

The deferred pension benefits payable to a former employee whose employment terminated prior to January 1, 1985 will remain as determined in accordance with the provisions of the Plan in effect on the date of his termination subject to the following conditions.

(1)  A former employee who terminated employment after September 2, 1974 and before January 1, 1976 and has not yet started to receive payments under this Section may elect to have his deferred pension reduced to provide the spouse benefit coverage described in Section V.C(4) in such manner as prescribed by the Board of Benefits and Pensions.

(2)  A former employee who terminated employment on or after January 1, 1976 and before August 23, 1984 and who has not yet started to receive payments may elect the spouse benefit described in Section V.C in such manner as prescribed by the Board of Benefits and Pensions.

(3)  A former employee whose employment terminated on or after August 23, 1984 but before January 1, 1985 and who first applies for benefit payments after January 1, 1985 or who dies prior to the commencement of benefits will have his payments (or calculated benefit) reduced to provide a spouse payment as provided in Section V.C.

E.  Application for Deferred Pension

A former employee who has terminated and who becomes entitled to receive monthly pension payments will receive such payments if he makes application in such manner as the Board of Benefits and Pensions may prescribe within three months of the time he wishes payments to begin. No payment will be made for any period before the employee reaches normal retirement age or terminates his employment, whichever is later, which elapses before the application is filed.

VI.  PAYMENTS TO SURVIVORS

A. Company-Paid Survivor Benefits

(1)   Eligibility

Except as provided in paragraph D of this Section, following the death on or after January 1, 1985 of (a) an active employee with 15 or more years of service, (b) a former employee who retired with pension under Section IV on or after January 1, 1985 or (c) a former employee who had 15 years of service upon transfer to an affiliated group company and (i) was employed within the affiliated group at his death, (ii) was at least 50 years of age when he retired from the affiliated group under a provision similar to paragraph A or B of Section IV, or (iii) retired from the affiliated group under a provision similar to paragraph C of Section IV, monthly payments will be made to: the surviving spouse of an active employee; the spouse at retirement of a former employee; or a survivor or survivors specified by him in such a manner as the Board of Benefits and Pensions may prescribe.  These payments will begin with the month following that in which the employee dies.  Provided the conditions of paragraph VI.A(4) are satisfied, the specified survivor or survivors will be limited to one of the following and may be changed at any time:

(a)   the employee's spouse, in which case payments will be made until death, and upon death of the spouse, the amount of the monthly payment will be divided among the employee's specified minor children in equal shares, each child's share to be paid until death or attainment of age 21, whichever first occurs; or

(b)   any or all of the employee's minor children, in which case the amount of the monthly payment will be divided among the specified minor children in equal shares, each child's share to be paid until death or attainment of age 21, whichever first occurs; or

(c)   a parent or stepparent of the employee in which case payments will be made until death of the specified survivor.

In the absence of a survivor specification it will be presumed that he has specified his spouse and all minor children under category (a) above.

(2)  Amount of Benefit

The amount of monthly payment under this paragraph A will be 0.5% of the deceased employee's Average Monthly Pay multiplied by his Service, but not less than $4 per year of Service plus 4% of Average Monthly Pay, provided that

(a)   the benefit will be reduced in accordance with Paragraph IV.B.(2) for employees who retired under the Early Retirement provisions of Paragraph IV.B. or in accordance with   Paragraph IV.D.(2) for employees who retired  under the Optional Retirement provisions of Paragraph IV.D.

(b)   if the survivor entitled to payments (except in the case of minor children) is more than five years younger than the employee, monthly payments under paragraph A of this Section will be reduced in accordance with Appendix E; and

(c)   with respect to benefits for the survivor(s) of a former employee who had been transferred to an affiliated group company,

(i) Average Monthly Pay and Service at the  time of transfer will be used to calculate the benefit payments, (ii) if the former employee had retired from the

affiliated group under a provision similar to paragraph A or B of Section IV, the percentage reduction specified in paragraph B(2) of Section IV corresponding to the former employee's age at retirement from the affiliated group and Service at time of transfer will be applied to the monthly payments to the survivor(s), and (iii) if the former employee had retired from the affiliated group under a provision similar to paragraph C of Section IV, no reduction will be applied.

(3) Company-Paid Benefits for Survivors of Former Employees Retired Prior to January 1, 1985

Following the death on or after January 1, 1985 of a former employee who retired with pension under Section IV prior to January 1, 1985 benefits payable to the survivor(s) specified in accordance with the Plan in effect prior to January 1, 1985 will be calculated as follows.

(a) If retirement took place on or after December 1, 1976, benefits will be calculated as set forth in paragraph VI.A(2).

(b) If retirement took place prior to December 1, 1976, benefits will be calculated as set forth in paragraph VI.A(2) except that "$2 per year of Service" will be substituted for "$4 per year of Service" and in determining Average Monthly Pay the five calendar years in which the employee's pay was highest will be substituted for the period specified in IX.A(2)(a)(i). However, the reduction specified in VI.A(2)(b) shall not apply in the case of minor children.

(4) An employee may specify a nonspouse survivor provided: (a) he has no spouse; (b) he provides evidence satisfactory to the Board of Benefits and Pensions that (i) his spouse cannot be located; (ii) he is legally separated or abandoned, pursuant to a court order to that effect; (iii) spousal consent is otherwise not required by regulations issued by the Secretary of the Treasury; or (c) his spouse has consented to waive benefit coverage under Section VI.A - and, where applicable, Section VI.C - in the manner prescribed by the Board of Benefits and Pensions. The employee and his spouse may waive coverage under Section VI.A at any time on or after the first day of the calendar year in which the employee attains age 35 and prior to the earlier of age 55 or his death.

B.  Post-Retirement Joint and Survivor Options

Except as provided in paragraph D of this Section, an employee who retires (a) after age 50 with at least 25 years of service, or (b) after attaining eligibility for an unreduced pension under the Normal or Early Retirement provisions (paragraph A or B) of Section IV, may elect a joint and survivor option and thereby have his pension reduced, using the investment return rate determined in accordance with Appendix A and the factors in Appendix D, in order to provide monthly payments after his death to a person named by him, subject to the following provisions.

(1) The election, in order to be effective, must be made in such manner as the Board of Benefits and Pensions may prescribe.

(2) The determination of amounts under this option will be made prior to the determination, if any, of amounts under the Income-Leveling Option of paragraph E of Section IV.

(3) The amount payable to the person named may be any multiple of 10% of the employee's pension, as determined in accordance with Section IV, except that

    (a) any incapability supplement payable under paragraph C(3) of Section IV shall not be included,

    (b) the sum of the amount payable to the person so named plus any amount payable to a specified survivor under paragraph A or to a spouse under paragraph C of this Section shall not exceed the reduced pension (excluding any incapability supplement) payable to the retired employee, and

    (c) the amount payable under this option shall not be less than $25 if the person so named is not a specified survivor under paragraph A or C of this Section.

(4) The reduction in the employee's monthly pension will be determined at the time of retirement and the reduced pension will be paid to him until death.

(5) Upon death of the retired employee, monthly payments determined in accordance with the option elected will be made to the person named beginning with the month following that in which the retired employee dies and ending with the month in which the person named dies.

(6) If the person named dies before the employee retires, the option shall terminate and the employee may elect another option at any time prior to the date of his retirement.

(7) If an employee who has elected an option is to be retired under the Incapability or Optional Retirement provisions of paragraph C or D of Section IV, he may revoke the option, or replace it with another option which provides the person named a lower percentage of his pension, at any time prior to his retirement.

C. Spouse Benefit Option

(1) This option provides a benefit which is a combination of a survivor payment in accordance with paragraphs A(1) and A(2) of this Section, and a monthly payment to the spouse equal to 10% of the employee's pension as determined under paragraph C(5) or C(6) of this Section. This combined benefit, increased as necessary under paragraph (C)(9) of this Section constitutes the "qualified joint and survivor annuity" as described under IRC Section 417. The combined benefit for a married participant will be at least as valuable as any other optional form of benefit payable under the Plan at the same time for eligible employees.

(2) To provide the monthly 10% payment for the spouse under this option, an employee's calculated pension will be reduced

    (a) 0.015% for each month up to and including the month in which the employee reaches age 65, and 0.025% for each month thereafter, that the option is in effect before retirement, and

    (b) using the investment return rate determined in accordance with Appendix A and the factors in Appendix D for coverage after retirement.

(c)   For employees terminating employment on or after March 1, 1998, the charge for coverage will not be applied.

For former employees terminating employment before March 1, 1998, who are living and have not commenced payment before March 1, 1998, the charge for coverage after termination of employment and before commencement of pension payments will be waived.

(3)   Pre-retirement coverage will be effective when an employee reaches age 55 with at least 15 years of service, unless (i) the employee provides satisfactory evidence that his spouse cannot be located; (ii) he is legally separated or abandoned, pursuant to a court order to that effect; (iii) spousal consent is otherwise not required by regulations issued by the Secretary of the Treasury, or the employee and his spouse specify otherwise in writing in the manner prescribed by the Board of Benefits and Pensions. An employee may revoke or reelect this option at any time prior to his death.

(4)   Post-retirement coverage will become effective on retirement unless (i) the employee provides satisfactory evidence that his spouse cannot be located; (ii) he is legally separated or abandoned, pursuant to a court order to that effect; (iii) spousal consent is otherwise not required by regulations issued by the Secretary of Treasury, or the employee and his spouse specify otherwise in writing in the manner prescribed by the Board of Benefits and Pensions within 90 days prior to the date of his retirement which specification may be revoked at any time and any number of times during the 90 day period ending on the date that benefit payments commence or in accordance with applicable Treasury Regulations. Benefit coverage under Sections VI.A and VI.C is provided for the spouse named at the time of retirement.

(5)   In the event of pre-retirement death, the monthly 10% payment will be based on the employee's pension calculated as though he had retired immediately prior to death under paragraph B(2) of Section IV.

(6)   The monthly 10% payment to the spouse of a retired employee will be based on the employee's pension as determined under Section IV (Section V for an employee described in Section VI.C(10)) except that

(a)   any incapability supplement shall not be included, and
(b)   all calculations will be made prior to the determination of amounts under the Income-Leveling Option.

(7)   To provide the monthly 10% payment and, if necessary, the supplement described in paragraph (9) below, for post-retirement coverage the employee's monthly pension payments will be reduced using the investment return rate determined in accordance with Appendix A and the factors in Appendix D.

(8)   Payments under this option will begin with the month following that in which the employee or retired employee dies and end with the month in which the spouse dies.

(9)   The benefit provided under paragraph C(1) of this Section will be supplemented if necessary to yield a monthly payment to the spouse equivalent to 50% of the employee's pension calculated as if such pension had been reduced to reflect the value of the 50% spouse benefit; using the investment return rate as determined in accordance with Appendix A and the factors in Appendix C. For purposes of this paragraph (9), coverage will be provided to employees under age 55 with at least 15

(3)   The amount payable to the person named may be any multiple of 10% of the employee's pension, as determined in accordance with Section IV, except that

    (a)   any incapability supplement payable under paragraph C(3) of Section IV shall not be included,

    (b)   the sum of the amount payable to the person so named plus any amount payable to a specified survivor under paragraph A or to a spouse under paragraph C of this Section shall not exceed the reduced pension (excluding any incapability supplement) payable to the retired employee, and

    (c)   the amount payable under this option shall not be less than $25 if the person so named is not a specified survivor under paragraph A or C of this Section.

(4)   The reduction in the employee's monthly pension will be determined at the time of retirement and the reduced pension will be paid to him until death.

(5)   Upon death of the retired employee, monthly payments determined in accordance with the option elected will be made to the person named beginning with the month following that in which the retired employee dies and ending with the month in which the person named dies.

(6)   If the person named dies before the employee retires, the option shall terminate and the employee may elect another option at any time prior to the date of his retirement.

(7)   If an employee who has elected an option is to be retired under the Incapability or Optional Retirement provisions of paragraph C or D of Section IV, he may revoke the option, or replace it with another option which provides the person named a lower percentage of his pension, at any time prior to his retirement.

C.   Spouse Benefit Option

(1)   This option provides a benefit which is a combination of a survivor payment in accordance with paragraphs A(1) and A(2) of this Section, and a monthly payment to the spouse equal to 10% of the employee's pension as determined under paragraph C(5) or C(6) of this Section. This combined benefit, increased as necessary under paragraph (C)(9) of this Section constitutes the "qualified joint and survivor annuity" as described under IRC Section 417. The combined benefit for a married participant will be at least as valuable as any other optional form of benefit payable under the Plan at the same time for eligible employees.

(2)   To provide the monthly 10% payment for the spouse under this option, an employee's calculated pension will be reduced

    (a)   0.015% for each month up to and including the month in which the employee reaches age 65, and 0.025% for each month thereafter, that the option is in effect before retirement, and

    (b)   using the investment return rate determined in accordance with Appendix A and the factors in Appendix D for coverage after retirement.

(c)   For employees terminating employment on or after March 1, 1998, the charge for coverage will not be applied.

For former employees terminating employment before March 1, 1998, who are living and have not commenced payment before March 1, 1998, the charge for coverage after termination of employment and before commencement of pension payments will be waived.

(3)   Pre-retirement coverage will be effective when an employee reaches age 55 with at least 15 years of service, unless (i) the employee provides satisfactory evidence that his spouse cannot be located; (ii) he is legally separated or abandoned, pursuant to a court order to that effect; (iii) spousal consent is otherwise not required by regulations issued by the Secretary of the Treasury, or the employee and his spouse specify otherwise in writing in the manner prescribed by the Board of Benefits and Pensions. An employee may revoke or reelect this option at any time prior to his death.

(4)   Post-retirement coverage will become effective on retirement unless (i) the employee provides satisfactory evidence that his spouse cannot be located; (ii) he is legally separated or abandoned, pursuant to a court order to that effect; (iii) spousal consent is otherwise not required by regulations issued by the Secretary of Treasury, or the employee and his spouse specify otherwise in writing in the manner prescribed by the Board of Benefits and Pensions within 90 days prior to the date of his retirement which specification may be revoked at any time and any number of times during the 90 day period ending on the date that benefit payments commence or in accordance with applicable Treasury Regulations. Benefit coverage under Sections VI.A and VI.C is provided for the spouse named at the time of retirement.

(5)   In the event of pre-retirement death, the monthly 10% payment will be based on the employee's pension calculated as though he had retired immediately prior to death under paragraph B(2) of Section IV.

(6)   The monthly 10% payment to the spouse of a retired employee will be based on the employee's pension as determined under Section IV (Section V for an employee described in Section VI.C(10)) except that

(a)   any incapability supplement shall not be included, and
(b)   all calculations will be made prior to the determination of amounts under the Income-Leveling Option.

(7)   To provide the monthly 10% payment and, if necessary, the supplement described in paragraph (9) below, for post-retirement coverage the employee's monthly pension payments will be reduced using the investment return rate determined in accordance with Appendix A and the factors in Appendix D.

(8)   Payments under this option will begin with the month following that in which the employee or retired employee dies and end with the month in which the spouse dies.

(9)   The benefit provided under paragraph C(1) of this Section will be supplemented if necessary to yield a monthly payment to the spouse equivalent to 50% of the employee's pension calculated as if such pension had been reduced to reflect the value of the 50% spouse benefit; using the investment return rate as determined in accordance with Appendix A and the factors in Appendix C. For purposes of this paragraph (9), coverage will be provided to employees under age 55 with at least 15

years of service provided that the employee and his spouse have not waived benefit coverage under Section VI.A(4).

(10) The term "employee" in this subsection includes a former employee transferred to an affiliated group company who had at least 15 years of service at the time of transfer.

(11) A written explanation of the pre-retirement coverage will be provided to the employee by the end of the three-year period beginning with the first day of the plan year in which the employee becomes a participant, where the participant becomes a participant after age 32.

(12) Not less than 30 and not more than 90 days prior to the date that pension payments commence, the employee shall be provided with a written explanation of:

(1) Each form of payment available under the Plan along with the respective values.
(2) Any right of the employee to defer commencement of his retirement income.
(3) The right of a single employee to elect a form of payment other than the form described in Section VI.
(4) The terms and conditions under which a married employee may elect a form of payment other than the form described in VI(C)(4).

Notwithstanding the foregoing, the employee may elect in writing to waive the 30-day notice requirement in accordance with applicable Treasury Regulations.

D.   Survivor Elections of Former Employees Whose Benefits Commenced on or Before January 1, 1985

Other provisions of Section VI notwithstanding effective January 1, 1985 a former employee whose benefits commenced on or before that date may specify a survivor(s) in accordance with paragraph VI.A without regard to the conditions of subparagraph (4) of that Section.

## VII.   REEMPLOYMENT

A former employee of an affiliated group company receiving pension payments under any such company's pension plan may be reemployed by the Company only upon approval of the Board of Benefits and Pensions. A former employee of the Company receiving pension payments under the Pension and Retirement Plan may be reemployed by an affiliated group company only upon approval of the Board of Benefits and Pensions. No approval of the Board is required for reemployment of a former employee terminated with a right to a deferred pension, if such reemployment is before his pension payments begin. If a former employee of the Company who was retired or otherwise terminated is reemployed by an affiliated group company, any pension payments due him by reason of his service will be suspended during the period of reemployment. When he again retires or is otherwise terminated, his pension rights will again be determined in accordance with this Plan. He may elect to receive either the newly determined rights or the pension rights he had prior to reemployment. If he is reemployed on less than a full-time basis, however, his pension payments may be continued upon approval of the Board of Benefits and Pensions.

## VIII.   NONASSIGNMENT

No assignment of the rights and interests of employees, pensioners and beneficiaries under this Plan will be permitted or recognized under any circumstances, nor shall such rights and interests

be subject to attachment or other legal processes for debts, except as required by Section 401(a)(13) of the Code; provided that, if more than one individual is treated as a surviving spouse pursuant to Section 401 (a)(13), the total amount to be paid will not exceed the amount that would be paid if there were only one surviving spouse. Where an assignment is made, benefits otherwise payable under this Plan will be reduced to reflect such assignment.

## IX.    DEFINITIONS AND GENERAL CONDITIONS

The provisions of this Pension and Retirement Plan are subject to the definitions and general conditions stated below.

A.    Definitions

    (1)    The term "employee"

        (a)    includes all employees of the Company;

        (b)    includes a U.S. citizen employed by a foreign or domestic subsidiary of the Company before July 1, 1987, who may be treated as an employee of the Company under Section 406 or 407 of the Code;

        (c)    includes a U.S. citizen or resident on leave of absence granted under Section IV.1(g) of the Continuity of Service Rules, hired by the Company and subsequently employed by a foreign or domestic subsidiary of the Company, who may be treated as an employee of the Company under Section 406 or 407 of the Code;

        (d)    includes a non-U.S. citizen on leave of absence granted under Section IV.1(g) of the Continuity of Service Rules, hired by the Company and subsequently employed by a member of a controlled group of corporations (within the meaning of Section 1563(a) of the Code) of which the Company is a member.

        (e)    excludes an individual who is on temporary assignment with the Company from a foreign affiliate of the Company with the expectation that he will return to duties with the foreign affiliate at the end of a period not exceeding three years;

        (f)    excludes an individual in a bargaining unit represented by a union for collective bargaining, with which discussions have been had concerning this Plan as amended unless and until (i) such discussions or (ii) existing collective bargaining agreements result in favor of applicability of the amended Plan. The terms of the Plan in effect immediately prior to the amendment shall continue to cover an individual so excluded unless and until discussions with the union representing his unit have concluded in favor of applicability to the unit of the amended Plan or of other employee benefits in lieu thereof, or unless and until the individual is made eligible under the amended Plan by lawful unilateral action of the Company;

        (g)    excludes individuals who must be treated as employees of the Company for limited purposes under the "Leased Employee" provisions of the Internal Revenue Code. For Plan Years commencing after December 31, 1996, "Leased Employee" shall mean an individual, not otherwise an Employee, who

16

pursuant to an agreement between a business entity within the "controlled group" and a leasing organization, has performed, on a substantially full-time basis, for a period of at least 12 months, services under the primary direction or control of the business entity within the Controlled Group, unless:

    (i)    the individual is covered by a money purchase pension plan maintained by the leasing organization and meeting the requirements of Code section $414(n)(5)(B)$, and

    (ii)    such individuals do not constitute more than 20% of all Non-Highly Compensated Employees of all Controlled Group business entities (within the meaning of Code section $414(n)(5)(C)(ii)$.

(2)    (a)    The term "Average Monthly Pay" means the higher of

    (i)    total pay for the thirty-six consecutive calendar months for which the employee's pay is the highest, divided by 36; or

    (ii)    average pay per month based on total pay over a number of calendar years, and a fraction of total pay for a calendar year if necessary, sufficient to obtain an aggregate amount of service equivalent to three full years. Such calendar years shall be selected beginning with the calendar year in which average pay per month was the highest and taking in turn calendar years of successively lower average pay per month. A fraction of total pay for a calendar year shall be calculated by multiplying average pay per month for that year by the number of months needed to yield an aggregate amount of service equivalent to three full years.

Where a retired or terminated employee is granted a Variable Compensation Award and/or variable pay for the calendar year in which his retirement is effective, his Average Monthly Pay will be computed to reflect the amount of the award and, if applicable, his monthly pension will be increased. The increased monthly pension will be paid effective with the date that the monthly pension payments commenced.

(b)    The term "pay" does not include

    (i)    allowance in connection with transfer of employment or termination of employment and other special payments;

    (ii)    awards and payments under a gain sharing program, the Special Compensation Plan, the Stock Option Plan, the former Dividend Unit Plan or similar plans of the Company or any of its affiliated companies;

    (iii)    for employees retiring before August 1994, the greater of 1) one half the Variable Compensation Award or 2) any deferred Variable Compensation Award, or for employees retiring after July 1994, but before January 1996, any deferred Variable Compensation Award;

    (iv)    for employees retiring before March 18, 1987, pay for service after the end of the month in which the employee reaches age 70; or

17

(v)    for years beginning on or after January 1, 1989, and before January 1, 1994, compensation of each employee under the Plan for any Plan year exceeding $200,000. This limitation shall be adjusted by the Secretary of the Treasury at the same time and in the same manner as under Section 415(d) of the Internal Revenue Code, except that the dollar increase in effect on January 1 of any calendar year is effective for Plan years beginning in such calendar year and the first adjustment to the $200,000 limitation is effective on January 1, 1990.

For years beginning on or after January 1, 1994, the annual compensation limit of each employee taken into account for determining all benefits provided under the Plan for any determination period shall not exceed $150,000, as adjusted for the cost-of-living in accordance with Section 401(a) (17) (B) of the Code. The cost-of-living adjustment in effect for a calendar year applies to any period no to exceed 12 months, over which compensation is determined ("determination period") beginning in such calendar year. If a determination period consists of fewer than 12 months, the compensation limit in effect for that determination period will be multiplied by a fraction, the numerator of which is the number of months in the determination period, and the denominator of which is 12.

In determining the compensation of an employee for purposes of this limitation, the rules of Section 414 (q) (6) of the Code shall apply before January 1, 1997, except that in applying such rules, the term "family" shall include only the spouse and lineal dependents who have not attained age nineteen (19) before the close of the year. If as a result of the application of such rules the adjusted annual compensation limitation is exceeded, then the limitation shall be prorated among the affected individuals in proportion to each such individual's compensation as determined under this Section prior to the application of this limitation.

When compensation for any prior determination period is taken into account in determining an employee's benefit accruing in the current Plan year, the compensation for that prior determination period is subject to the annual compensation limit in effect for that prior determination period. For this purpose, for determination periods beginning before January 1, 1994, the annual compensation limit is $150,000.

In the case of employees who have compensation in excess of the annual compensation limit and who have service before and after the effective dates of the $200,000 and/or the $150,000 limits on annual compensation, their benefits shall be calculated by making a fresh start as of January 1, 1989 and another fresh start as of January 1, 1994 (the "fresh start dates"). In each case, the fresh start shall be calculated as described in proposed or final Treasury Regulations 1.401(a) (17)-1, using the formula with wear-away so that the employee's accrued benefit under this Plan will be the greater of the accrued benefit determined for the employee under (aa) or (bb) below:

18

        (aa)  the employee's accrued benefit as of the last day of the last Plan year beginning before the fresh start date, frozen in accordance with Section 1.401(a) (4) -13 of the Treasury Regulations;

        (bb) the employee's accrued benefit determined under the benefit formula applicable for the Plan year beginning on the fresh start date, as applied to the employee's total years of service credited to the employee for purposes of benefit accrual.

(c)    The term "Variable Compensation Award" means the total award value under the Variable Compensation Plan, or any predecessor or successor plan thereto, including but not limited to the Global Variable Compensation Plan, the Variable Compensation Plan for the U.S. Region and any Performance Based Compensation Plan. The value of each award will be divided evenly over the period for which an employee was compensated during the award year. All Variable Compensation Awards preceding retirement or termination will be taken into account in computing "Average Monthly Pay".

(d)    The term "gain sharing program" means a pay program that provides additional pay only if business objectives are exceeded. Performance Based Compensation Plans, or successors thereto, shall not be considered to be gain sharing programs for purposes of this Plan.

(e)    The term "variable pay" means the variable payment under a pay program that relates a portion of total pay to business objectives such that if objectives are met, targeted pay levels are reached, but if objectives are exceeded or are not met, pay is above or below targeted levels. The variable pay will be divided evenly over the period of an employee's service to which the payment is attributable.

(3)   (a)    The term "Service" means the length, in years and fractions of a year, of an employee's period of "continuous service" for computing the amount of a pension as determined under the provisions of the Company's Continuity of Service Rules; provided that in the case of an employee described in Section IX.A(1)(b), the term "Service" shall not include any period after June 30, 1987.

For employees retiring before March 18, 1987, service after the end of the month in which the employee reaches age 70 will not be counted for computing the amount of pension.

The following conditions shall also apply for purposes of determining eligibility for benefits under Section V of this Plan.

(i)    An employee terminating employment before January 1, 1999 who is compensated with respect to 1,000 or more hours during a computation period will be credited with one year of service. Once having established such a year of service, such employee will be credited with an additional year of service for each computation period during which he is compensated with respect to 1,000 or more hours.

(ii)  An employee will not incur a break in service if he is compensated with respect to more than 500 hours during a computation period.

(iii)  An employee will be credited with up to 501 hours to avoid a break in service if the employee provides evidence satisfactory to the Board of Benefits and Pensions or its delegate that the absence (i) commenced on or after January 1, 1985 and (ii) was due to the employee's pregnancy, the birth of the employee's child, or the legal adoption of a child by the employee. Service to avoid such a break will be credited in either the computation period in which the absence commenced or the next succeeding computation period, whichever is necessary to prevent the first break in service.

(b)  An employee whose service is not credited under the Continuity of Service Rules, pursuant to Section II.1(c) of such Rules, will be credited with service only for purposes of determining eligibility for benefits under Section V of this Plan as follows:

(i)  Such an employee compensated with respect to 1,000 or more hours during a computation period will be credited with one year of service. Once having established such a year of service, an employee will be credited with an additional year of service for each computation period during which he is compensated with respect to 1,000 or more hours.

(ii)  Such an employee will not receive service credit if he is compensated for less than 1,000 hours during a computation period.

(iii)  Such an employee will incur a break in service if he is compensated with respect to 500 or less hours in a computation period. For employees reemployed after March 1, 1997, or awaiting a service cure on March 1, 1997, following a break in service, prior service will be taken into account immediately upon reemployment.

(iv)  An employee will be credited with up to 501 hours to avoid a break in service if the employee provides evidence satisfactory to the Board of Benefits and Pensions or its delegate that the absence (i) commenced on or after January 1, 1985 and (ii) was due to the employee's pregnancy, the birth of the employee's child, or the legal adoption of a child by the employee. Service to avoid such a break will be credited in either the computation period in which the absence commenced or the next succeeding computation period, whichever is necessary to prevent the first break in service.

(v)  Such an employee will not incur a break in service if he is compensated with respect to more than 500 hours during a computation period.

The amount of benefit attributable to any years of service so determined under (b)(i) above, will be calculated as though that service had been credited under paragraph A(3)(a) of this Section.

(c)  For purposes of paragraph A(3) of this Section, a computation period shall be a period of 12 consecutive months commencing the later of January 1, 1976,

20

or the employee's first day of employment or reemployment, whichever is applicable, or any succeeding anniversary of such date.

Effective March 1, 1998, an initial computation period shall be a period of 12 consecutive months commencing on the employee's first date of employment. All succeeding computation periods shall be determined on the basis of time worked in a calendar-year basis, beginning January 1 and ending on December 31. Succeeding calendar year computation periods will begin with the calendar year which includes the first anniversary of an employee's employment commencement date.

(d)     For purposes of paragraph A(3) of this Section, the term "hour" means each hour for which an employee is compensated or entitled to compensation for the performance of duties and includes each such hour for which back pay, irrespective of mitigation of damages, has been awarded or agreed to by the Company. The term "hour" also includes each hour for which an employee is compensated or entitled to compensation due to vacation, holiday, illness, incapacity (including disability), jury duty, military duty or leave of absence. No more than 501 hours shall be credited hereunder to any employee on account of any single continuous period during which no duties are performed unless such period of compensation is taken into account in determining an employee's length of continuous service under the Continuity of Service Rules. Hours shall be credited to the period during which the duties are performed or to which the payment relates and, in the case of a period where no duties are performed, shall be credited on the basis of the number of regularly scheduled working hours during the period. To the extent not provided above, the rules set forth in Department of Labor Regulations 2530.200b-2(b) and (c), which are hereby incorporated by reference, shall be followed.

(e)     For purposes of determining eligibility for benefits under Section V of this Plan, an employee's service with any member of the controlled group shall be recognized with respect to the period of affiliation.

(f)     Each employee shall become a participant in the Plan on his first day of employment or reemployment, except that an employee whose service is not credited under the Continuity of Service Rules shall not be eligible to participate in the Plan prior to January 1, 1976.

(4)     The term "Primary Social Security Benefit" means the monthly primary old-age benefit to which the employee would be immediately entitled (if age 62 or over) or to which he would be entitled at age 62 (if younger than 62), in accordance with the Federal Social Security Act in effect on January 1 of the year of his retirement or termination and based on his actual earnings on which the Company (or any other company, to the extent that service therewith is recognized in computing a benefit under this Plan) has paid taxes under the Federal Insurance Contributions Act. In determining the Primary Social Security Benefit for purposes of this Plan, the employee shall be treated as fully insured under the Federal Social Security Act. For years for which the Company has no record of his actual earnings, an estimate will be calculated by projecting backwards from the last known year using rates equal to the actual changes in national average earnings, as determined by the Social Security Administration. However, the employee may elect to have his Primary Social Security Benefit calculated using his actual earnings, provided he supplies

21

documentation of such earnings from the Social Security Administration within 30 days following the later of the date of his separation from service and the date he is notified by the Company of his entitlement to a benefit.

(5)     The terms "actuarially reduced" and "actuarially increased" mean such reduction or increase in the monthly payment to the retired employee or his survivor under this Plan as shall be determined by the Board of Benefits and Pensions, with the advice of an actuary, taking into account the age of the employee or of the survivor entitled to receive payments, or both, as appropriate.  The actuarial reduction or actuarial increase will be calculated using:

    (a)     the investment return rate determined in accordance with Appendix A, and

    (b)     mortality rates for pensioners and for survivors using, respectively, the 1985 Du Pont Pensioner Mortality Table and the 1985 Du Pont Survivor Mortality Table.

(6)     The term "Company" means E. I. du Pont de Nemours and Company and/or any wholly owned subsidiary or part thereof which adopts this Plan with the approval of the Office of the Chief Executive, or such person or persons as the Office of the Chief Executive may designate.

(7)     The term "Plan Year" means calendar year.

(8)     The term "controlled group" means E. I. du Pont de Nemours and Company and its controlled group of corporations within the meaning of Section 1563(a) of the Code.

(9)     The term "affiliated group" means E. I. du Pont de Nemours and Company and its controlled group of corporations within the meaning of Section 1563(a) of the Code, but does not include any foreign subsidiary or any domestic subsidiary which derives in excess of 50% of its gross income for a taxable year from sources without the United States (as defined in Section 7701(a)(9) of the Code).

(10)    The term "Code" means the Internal Revenue Code of 1986, as amended.

(11)    Effective for years beginning after December 31, 1996, the term "Highly Compensated Employees" means any employee who (i) was a 5-percent owner at any time during the year of the preceding years, or (ii) for the preceding year had compensation from the Company in excess of $80,000 and, was in the top-paid group for the preceding year.  The $80,000 amount is adjusted at the same time and in the same manner as under Section 415(d) of the Code, except that the base period is the calendar quarter ending September 30, 1996. For this purpose the applicable year of the plan for which a determination is being made is called a determination year and the preceding 12-month period is called a look-back year. The determination of who is a Highly Compensation Employee, including the determination of the number and identity of Employees in the top-paid group, the number of Employees treated as officers and the compensation that is considered, will be made in accordance with Section 414(q) of the Code and the regulations thereunder.

## DuPont Pension and Retirement Plan

The subjects covered on pages 23 to 104 of the pension plan are shown in the index on page (iii).

Those pages have not been included because they do not deal with the object of this civil action which is the calculation of the amount of the pension.

The entire Pension Plan is available to the defendant through the Human Resources Department of the Du Pont Company.

# Your New Benefit Amount

BENEFICIARY'S NAME:

BASIL V GREGOROVICH

**SOCIAL SECURITY CLAIM NUMBER**
(only the last 4 digits are shown to help prevent identity theft):    XXX-XX-3748 A

Your Social Security benefits will increase by 2.1 percent for 2004, because of a rise in the cost of living. You can use this letter when you need proof of your benefit amount to receive food stamps, rent subsidies, energy assistance, bank loans, or for other business.

## How Much Will I Get And When?

- Your new monthly amount (before deductions) is                                         **$1,775.00**.
- The amount we are deducting for Medicare is                                               **$0.00**.
  (If you did not have Medicare as of Nov. 21, 2003,
  or if someone else pays your premium, we show $0.00.)
- The amount we are deducting for voluntary federal tax withholding is _____ **$0.00**.
  (If you did not elect voluntary federal tax withholding as of
  Nov. 21, 2003, we show $0.00.)
- After taking any other deductions, we will deposit                                       **$1,775.00**
  into your bank account on   Jan. 14, 2004.

  If you disagree with any of these amounts, you should write to us within 60 days from the date you receive this letter.

## What If I Have Questions?

We invite you to visit our website at *www.socialsecurity.gov* on the Internet to find general information about Social Security. You also can call us at **1-800-772-1213**, 24 hours a day. We can answer specific questions by phone from 7 a.m. until 7 p.m. on business days. Our lines are busiest early in the week and early in the month so, if your business can wait, it is best to call at other times. Please have your full nine-digit Social Security number available when you call or visit and include it on any letter you send to the Social Security Administration. If you are deaf or hard of hearing, you may call our TTY number, **1-800-325-0778**. You also can visit your local office.

SUITE 200
92 READS WAY
NEW CASTLE DE

BNC #:  **03B1535B12599**

Over →

**SOCIAL SECURITY ADMINISTRATION**
MID-ATLANTIC PROGRAM SERVICE CENTER
300 SPRING GARDEN STREET
PHILADELPHIA PA 19123-2999

OFFICIAL BUSINESS
PENALTY FOR PRIVATE USE, $300

**Be sure to check out our**
**website:** *www.socialsecurity.gov*

PRESORTED
FIRST-CLASS MAIL
POSTAGE AND FEES PAID
SOCIAL SECURITY
ADMINISTRATION
PERMIT NO. G-11

CU2706037-12012706845
0277-434-08

BASIL V GREGOROVICH
7 ZACHARY CT
WILMINGTON DE 19803-3967

# Social Security Administration
## Retirement, Survivors and Disability Insurance

Important Information

Mid-Atlantic Program Service Center
300 Spring Garden Street
Philadelphia, Pennsylvania 19123-2992
Date:  June 2, 2004
Claim Number: ▆▆▆▆▆▆▆▆

BASIL V GREGOROVICH
7 ZACHARY COURT
WILMINGTON DE 19803-3967

You are entitled to medicare hospital insurance beginning April 2003 and medical
insurance beginning July 2004.

### What We Will Pay And When

- You will receive $1,709.00 for June 2004 around July 14, 2004.

- After that you will receive $1,709.00 on or about the second Wednesday of
  each month.

### Information About Medicare

The monthly premium for your supplemental medical insurance is $66.60
beginning July 2004.

We will start to take premiums out of your July 14, 2004 check.

### If You Have Any Questions

We invite you to visit our website at www.socialsecurity.gov on the Internet to
find general information about Social Security.  If you have any specific
questions, you may call us toll-free at 1-800-772-1213, or call your local Social
Security office at 1-302-323-0304.  We can answer most questions over the
phone.  If you are deaf or hard of hearing, you may call our TTY number,
1-800-325-0778.  You can also write or visit any Social Security office.  The office
that serves your area is located at:

SOCIAL SECURITY
SUITE 200
92 READS WAY
NEW CASTLE, DE 19720

C                                    See Next Page

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A

If you do call or visit an office, please have this letter with you. It will help us answer your questions. Also, if you plan to visit an office, you may call ahead to make an appointment. This will help us serve you more quickly when you arrive at the office.

Steven G. DeMarco
Assistant Regional Commissioner,
Processing Center Operations



# Board of Benefits and Pensions

June 26, 2006


Mr. Basil V. Gregorovich
7 Zachary Court
Wilmington, DE 19803-3967

                          Re:  Appeal of PSSB Calculation Results

Dear Mr. Gregorovich:


The Board of Benefits and Pensions (the "Board") of E. I. du Pont de Nemours and
Company, Inc. ("DuPont") has completed its review of your appeal regarding the
calculation of the Primary Social Security Benefit in your pension determination.

In connection with your layoff on June 30, 2004 during the corporate CTP program, you
were eligible for Optional Retirement under Section IV-D of the DuPont Pension and
Retirement Plan (the "Plan").

You chose to commence your benefits immediately. Including consideration of your
February 2005 Variable Compensation award, your total retirement benefit was
calculated to be $4,767.00 per month in the form of a Pension Benefit. The following
details the calculation of this benefit:

| | |
|---|---|
| Benefit Service | 35.96389 years |
| Average Monthly Compensation | $10,562.00 |
| Primary Social Security Benefit (PSSB) | $ 1,863.00 |
| | |
| Formula A (1:2%) | $ 4,558.21 |
| Formula B (1.5% with PSSB offset) | $ 4,766.26 |
| Formula C (minimum) | $ 1,379.88 |
| Maximum of Three Formulas | $ 4,766.26 |
| Early Commencement Factor | N/A |
| Monthly Benefit at BCD (rounded up) | $ 4,767.00 |

You contend that the Primary Social Security Benefit should reflect the benefit calculated
for your by the Social Security Administration (SSA) of $1,775.00 per month. Based on
that amount as the PSSB, the Plan Formula B benefit would be $4,810.26 (rounded up to
$4,811.00), producing a benefit $44.00 per month greater. Your appeal requests that your
benefit be adjusted to $4,811.00 per month.

Mr. Basil Gregorovich
June 26, 2006
Page 2

We do not have a copy of the statement that you received from the Social Security
Administration, so we don't know how they came up with the result of $1,775.00 per
month. However, in one of your letters you state "...my monthly social security benefit
is $1,775.00 as calculated by the Social Security Administration starting January 14th of
the year 2004, the year in which I am retiring." The SSA calculation appears to be based
on a different determination date from the DuPont Connection calculation -- January 14,
2004 vs. July 1, 2004. You were eligible to commence your Social Security benefits on a
reduced basis as early as April 2000, when you attained age 62. Based on your year of
birth (1938), you became eligible for full (unreduced) benefits at age 65 and 2 months, or
June 2003. Our calculation of your Social Security benefits as of June 2003 comes
within just a few dollars of the $1,775.00 amount you report that Social Security is
paying you.

Regardless of the Social Security Administration's calculations, the Plan benefit is
calculated based on DuPont's calculation of the Social Security Primary Insurance
Amount. It is based on FICA-taxable wages to the extent that such earnings were
associated with DuPont service recognized in computing a benefit under the Plan. Plan
participants may choose to provide a full history of FICA-taxable wages from the SSA,
but DuPont still prepares the PSSB calculation.

Using your DuPont history of FICA-taxable wages, year 2004 law, a June 30, 2004
retirement date, and the SSA's PC-based benefit calculation system ("AnyPIA"), we can
match to the dollar the $1,863.00 result that DuPont Connection had computed.

The calculation provided to you by DuPont Connection was correct. The benefits that
you are currently receiving have been verified against DuPont's pension plan
administration and procedures. The Board finds that there is no basis for the recognition
of a different PSSB calculation. Your appeal for increased pension benefits is therefore
denied.

Please be aware that this review by the Board of Benefits and Pensions concludes your
rights of appeal within DuPont.

Sincerely,

Andrew F. Lesser
DELEGATE OF THE BOARD OF BENEFITS AND PENSIONS

/afl

*EXHIBIT E*

## UNITED STATES DISTRICT COURT DISTRICT OF DELAWARE

### BASIL V GREGOROVICH VS E I DUPONT DE NEMOURS & CO

**Interest:**        2.05% 1 year Constant Maturity Treasury Yield, Title 28, Part V, Chapter 125, SS 1961

| Number | Date | Shortfall | Interest | Months | Interest Owed |
|--------|------|-----------|----------|--------|---------------|
| 1 | 7/31/2004 | $ 44.00 | 2.05% | 48 | $ 3.61 |
| 2 | 8/31/2004 | $ 44.00 | 2.05% | 47 | $ 3.53 |
| 3 | 9/30/2004 | $ 44.00 | 2.05% | 46 | $ 3.46 |
| 4 | 10/31/2004 | $ 44.00 | 2.05% | 45 | $ 3.38 |
| 5 | 11/30/2004 | $ 44.00 | 2.05% | 44 | $ 3.31 |
| 6 | 12/31/2004 | $ 44.00 | 2.05% | 43 | $ 3.23 |
| 7 | 1/31/2005 | $ 44.00 | 2.05% | 42 | $ 3.16 |
| 8 | 2/28/2005 | $ 44.00 | 2.05% | 41 | $ 3.08 |
| 9 | 3/31/2005 | $ 44.00 | 2.05% | 40 | $ 3.01 |
| 10 | 4/30/2005 | $ 44.00 | 2.05% | 39 | $ 2.93 |
| 11 | 5/31/2005 | $ 44.00 | 2.05% | 38 | $ 2.86 |
| 12 | 6/30/2005 | $ 44.00 | 2.05% | 37 | $ 2.78 |
| 13 | 7/31/2005 | $ 44.00 | 2.05% | 36 | $ 2.71 |
| 14 | 8/31/2005 | $ 44.00 | 2.05% | 35 | $ 2.63 |
| 15 | 9/30/2005 | $ 44.00 | 2.05% | 34 | $ 2.56 |
| 16 | 10/31/2005 | $ 44.00 | 2.05% | 33 | $ 2.48 |
| 17 | 11/30/2005 | $ 44.00 | 2.05% | 32 | $ 2.41 |
| 18 | 12/31/2005 | $ 44.00 | 2.05% | 31 | $ 2.33 |
| 19 | 1/31/2006 | $ 44.00 | 2.05% | 30 | $ 2.26 |
| 20 | 2/28/2006 | $ 44.00 | 2.05% | 29 | $ 2.18 |
| 21 | 3/31/2006 | $ 44.00 | 2.05% | 28 | $ 2.10 |
| 22 | 4/30/2006 | $ 44.00 | 2.05% | 27 | $ 2.03 |
| 23 | 5/31/2006 | $ 44.00 | 2.05% | 26 | $ 1.95 |
| 24 | 6/30/2006 | $ 44.00 | 2.05% | 25 | $ 1.88 |
| 25 | 7/31/2006 | $ 44.00 | 2.05% | 24 | $ 1.80 |
| 26 | 8/31/2006 | $ 44.00 | 2.05% | 23 | $ 1.73 |
| 27 | 9/30/2006 | $ 44.00 | 2.05% | 22 | $ 1.65 |
| 28 | 10/31/2006 | $ 44.00 | 2.05% | 21 | $ 1.58 |
| 29 | 11/30/2006 | $ 44.00 | 2.05% | 20 | $ 1.50 |
| 30 | 12/31/2006 | $ 44.00 | 2.05% | 19 | $ 1.43 |
| 31 | 1/31/2007 | $ 44.00 | 2.05% | 18 | $ 1.35 |
| 32 | 2/28/2007 | $ 44.00 | 2.05% | 17 | $ 1.28 |
| 33 | 3/31/2007 | $ 44.00 | 2.05% | 16 | $ 1.20 |
| 34 | 4/30/2007 | $ 44.00 | 2.05% | 15 | $ 1.13 |
| 35 | 5/31/2007 | $ 44.00 | 2.05% | 14 | $ 1.05 |
| 36 | 6/30/2007 | $ 44.00 | 2.05% | 13 | $ 0.98 |
| 37 | 7/30/2007 | $ 44.00 | 2.05% | 12 | $ 0.90 |
| 38 | 8/31/2007 | $ 44.00 | 2.05% | 11 | $ 0.83 |
| 39 | 9/30/2007 | $ 44.00 | 2.05% | 10 | $ 0.75 |
| 40 | 10/31/2007 | $ 44.00 | 2.05% | 9 | $ 0.68 |
| 41 | 11/30/2007 | $ 44.00 | 2.05% | 8 | $ 0.60 |
| 42 | 12/31/2007 | $ 44.00 | 2.05% | 7 | $ 0.53 |
| 43 | 1/31/2008 | $ 44.00 | 2.05% | 6 | $ 0.45 |
| 44 | 2/29/2008 | $ 44.00 | 2.05% | 5 | $ 0.38 |
| 45 | 3/31/2008 | $ 44.00 | 2.05% | 4 | $ 0.30 |
| 46 | 4/30/2008 | $ 44.00 | 2.05% | 3 | $ 0.23 |
| 47 | 5/31/2008 | $ 44.00 | 2.05% | 2 | $ 0.15 |
| 48 | 6/30/2008 | $ 44.00 | 2.05% | 1 | $ 0.08 |
| | **Total** | $ 2,112.00 | | **Total** | $ 88.40 |

*EXHIBIT F*

## Table A. Expectation of life by age, race, and sex: United States, 2003

| Age | All races | | | White | | | Black | | |
|---|---|---|---|---|---|---|---|---|---|
| | Total | Male | Female | Total | Male | Female | Total | Male | Female |
| 0. . . . . . . . . . . . . . . . . . . . . . . | 77.4 | 74.7 | 80.0 | 77.9 | 75.3 | 80.4 | 72.6 | 68.9 | 75.9 |
| 1. . . . . . . . . . . . . . . . . . . . . . . | 77.0 | 74.3 | 79.5 | 77.4 | 74.8 | 79.8 | 72.6 | 69.0 | 75.9 |
| 5. . . . . . . . . . . . . . . . . . . . . . . | 73.1 | 70.4 | 75.6 | 73.4 | 70.9 | 75.9 | 68.7 | 65.2 | 72.0 |
| 10. . . . . . . . . . . . . . . . . . . . . . | 68.1 | 65.5 | 70.6 | 68.5 | 65.9 | 71.0 | 63.8 | 60.2 | 67.1 |
| 15. . . . . . . . . . . . . . . . . . . . . . | 63.2 | 60.5 | 65.7 | 63.5 | 61.0 | 66.0 | 58.9 | 55.3 | 62.1 |
| 20. . . . . . . . . . . . . . . . . . . . . . | 58.4 | 55.8 | 60.8 | 58.7 | 56.2 | 61.1 | 54.1 | 50.6 | 57.2 |
| 25. . . . . . . . . . . . . . . . . . . . . . | 53.6 | 51.2 | 56.0 | 54.0 | 51.6 | 56.3 | 49.5 | 46.2 | 52.4 |
| 30. . . . . . . . . . . . . . . . . . . . . . | 48.9 | 46.5 | 51.1 | 49.2 | 46.9 | 51.4 | 44.9 | 41.7 | 47.7 |
| 35. . . . . . . . . . . . . . . . . . . . . . | 44.1 | 41.8 | 46.3 | 44.5 | 42.2 | 46.6 | 40.3 | 37.3 | 43.0 |
| 40. . . . . . . . . . . . . . . . . . . . . . | 39.5 | 37.2 | 41.5 | 39.8 | 37.6 | 41.8 | 35.8 | 32.9 | 38.4 |
| 45. . . . . . . . . . . . . . . . . . . . . . | 34.9 | 32.8 | 36.9 | 35.2 | 33.1 | 37.1 | 31.5 | 28.6 | 34.0 |
| 50. . . . . . . . . . . . . . . . . . . . . . | 30.5 | 28.5 | 32.3 | 30.7 | 28.7 | 32.5 | 27.4 | 24.7 | 29.8 |
| 55. . . . . . . . . . . . . . . . . . . . . . | 26.2 | 24.3 | 27.9 | 26.4 | 24.5 | 28.0 | 23.7 | 21.1 | 25.7 |
| 60. . . . . . . . . . . . . . . . . . . . . . | 22.2 | 20.4 | 23.7 | 22.3 | 20.5 | 23.7 | 20.1 | 17.8 | 21.9 |
| 65. . . . . . . . . . . . . . . . . . . . . . | 18.4 | 16.8 | 19.7 | 18.4 | 16.8 | 19.7 | 16.8 | 14.8 | 18.3 |
| 70. . . . . . . . . . . . . . . . . . . . . . | 14.8 | 13.4 | 15.9 | 14.9 | 13.4 | 15.9 | 13.8 | 12.0 | 15.0 |
| 75. . . . . . . . . . . . . . . . . . . . . . | 11.7 | 10.5 | 12.5 | 11.6 | 10.4 | 12.5 | 11.1 | 9.6 | 12.1 |
| 80. . . . . . . . . . . . . . . . . . . . . . | 8.9 | 7.9 | 9.5 | 8.8 | 7.9 | 9.4 | 8.8 | 7.6 | 9.5 |
| 85. . . . . . . . . . . . . . . . . . . . . . | 6.6 | 5.9 | 7.0 | 6.5 | 5.8 | 6.9 | 6.9 | 6.0 | 7.3 |
| 90. . . . . . . . . . . . . . . . . . . . . . | 4.8 | 4.3 | 5.0 | 4.7 | 4.2 | 4.9 | 5.3 | 4.6 | 5.6 |
| 95. . . . . . . . . . . . . . . . . . . . . . | 3.5 | 3.1 | 3.5 | 3.4 | 3.0 | 3.4 | 4.1 | 3.5 | 4.2 |
| 100. . . . . . . . . . . . . . . . . . . . . | 2.5 | 2.2 | 2.5 | 2.4 | 2.1 | 2.4 | 3.1 | 2.7 | 3.1 |

# IRA minimum distributions table

**By Kay Bell • Bankrate.com**

Tax law requires individual retirement account holders to begin taking out at least minimum amounts, known as **RMDs**, from their accounts once they reach age 70½. Technically, that means the IRA money must start coming out in specific increments no later than April 1 following the year you reach that age.

Several years ago, the IRS revised distribution rules and the various life expectancy tables used to make the RMD calculations. The reformulation means that taxpayers now have to take out less. This is welcome news to retirees who have enough income from other sources and who want to withdraw as little as possible from their IRAs, letting the accounts grow in value for longer.

## Required minimum IRA distributions

| Age of retiree | Distribution period (in years) | Age of retiree | Distribution period (in years) |
|---|---|---|---|
| 70 | 27.4 | 93 | 9.6 |
| 71 | 26.5 | 94 | 9.1 |
| 72 | 25.6 | 95 | 8.6 |
| 73 | 24.7 | 96 | 8.1 |
| 74 | 23.8 | 97 | 7.6 |
| 75 | 22.9 | 98 | 7.1 |
| 76 | 22.0 | 99 | 6.7 |
| 77 | 21.2 | 100 | 6.3 |
| 78 | 20.3 | 101 | 5.9 |
| 79 | 19.5 | 102 | 5.5 |

*EXHIBIT H*

# Life Expectancy Calculator

Start Here
Family History
Health
Lifestyle
Diet
Exercise
Driving
Results
▶Summary

## Summary

[ Print ]

### What is my life expectancy?

Your life expectancy is **99 years old**.

## Information entered

| | |
|---|---|
| **Personal** | |
| Gender | male |
| Current age | 70 |
| Weight | 165 |
| Height | 6 feet 0 inches |
| Frame size | medium |
| Education completed | college graduate |
| How would a friend describe you? | Easy-going and relaxed |
| **Family History** | |
| Grandparents who lived past age 80 | 1 |
| Mother | Lived to at least 80 |
| Father | Other |
| Parents, siblings or grandparents who have had cancer, cardiovascular disease or childhood-onset diabetes | 2 |
| Died before age of 60 of these conditions | 0 |
| Died of natural causes before age 60? | 0 |
| **Health** | |
| Blood pressure | 110/70 |
| Diastolic pressure ever over 90? | no |
| Over 105? | no |
| Have you always weighed between 153 and 187 | no |
| Weight fluctuated by more than 10 pounds? | yes |
| Cholesterol level | 145 |
| Cholesterol ever over 240? | no |
| Over 300? | no |
| **Lifestyle** | |
| Drink alcohol | yes |
| Ever drink more than 2 drinks a day? | no |
| Regularly drink until intoxicated? | no |
| Ever smoked? | no |

| | |
|---|---:|
| Years since quit smoking | 0 |
| Cigarettes smoked per day | 0 |
| Smoked marijuana once a week or more | no |
| **Diet** | |
| Eating habits | low-fat foods with five or more portions of fruit and vegetables |
| **Exercise** | |
| Exercise routine | moderate regular exercise schedule, such as walking at least two miles three times a week? |
| Regular doctor's exams? | yes |
| Proctoscopic examinations every other year? | yes |
| **Driving** | |
| Moving violations or accidents within 3 years? | no |
| More than 4 in the past two years? | no |
| Times convicted of driving under the influence within 5 years? | 0 |
| Wear safety belts? | yes |

## Results

| | |
|---|---:|
| **Answer** | |
| Life Expectancy | 99 |
| **Details** | |
| Ideal Weight | 170 |
| Biggest positive factors | Age, Diet, Age of parents |
| Biggest negative factors | Family health, Gender, Weight history |

**Assumptions & Simplifications**

This calculator uses the averages for life expectancy based on your age, sex, family history and personal lifestyle.

**< Back**

advertisement

**Data providers**
Copyright © 2008 Reuters. Click for Restrictions.
Quotes supplied by Interactive Data.

*EXHIBIT I*

July 1, 2004

DuPont Connection
Pension Claims & Appeals
P.O. Box 1407
Lincolnshire IL  60069-1407

Re: Pension Calculation for Basil V. Gregorovich

I, Basil V. Gregorovich, Social Security Number▇▇▇▇▇▇▇▇, retired from E. I. Du Pont de Nemours and Company on June 30th year 2004.

This letter is an appeal of my pension calculation. In the DuPont Dow Pension and Retirement Plan, page 7 it is stated the Primary Social Security Benefit (PSSB) used in the pension calculation is based on:

- Your DuPont Dow earnings
- The Social Security law in effect on January 1 of the year you retire or terminate.

Based on my Du Pont earnings my monthly social security benefit is $ 1775. as calculated by the Social Security Administration starting January 14th of the year 2004, the year in which I am retiring. (see attachment)
This official government calculation differs from the Du Pont calculation that was $ 1863. This difference of  $ 88. in PSSB results in an increase of my pension of $ 44. which brings the correct pension amount to $ 4804.

Please make the adjustment.

Yours sincerely

*Basil V. Gregorovich*

Basil V. Gregorovich



DuPont Connection                                    July 19, 2004
P.O. Box 1407
Lincolnshire, IL 60069-1407
1-800-775-5955

Basil V. Gregorovich
7 Zachary Ct.
Wilmington, DE 19803-3967

Dear Mr. Gregorovich,

Thank you for taking the time to detail your concerns regarding you pension benefit amount in
your letter dated July 1, 2004. In your letter, you request the correction of your pension benefit
calculation to reflect a lower Primary Social Security Benefit (PSSB) to match your actual Social
Security benefit. After carefully researching this issue, we have found that we cannot grant your
request.

According to the Plan, the PSSB used in Formula B is the Social Security benefit you are entitled
to receive based on:
- Employee's DuPont earnings (not entire work history) and
- Social Security law in effect on January 1st of the retirement or termination year.

   **It is important to keep in mind that while Formula B uses PSSB to calculate your
   pension benefit, this has no effect on the amount of Social Security benefit you
   actually received from the government.** The plan considers only the Social Security
   benefit you earn while on DuPont's payroll (rather then over your total employment
   history). **Therefore, the PSSB used in your calculation will not be equal to the
   amount that is calculated by the Social Security Administration.**

We hope this response has helped to clarify your questions. We must administer the plan within
the confines of the plan language so the benefits are consistent for all participants. If you have
any questions please do not hesitate to call DuPont Connection at 800-775-5955. Should you
wish to appeal this decision, you have the right to submit an appeal in writing. The appeal must
be received no later that 60 days from the date of this letter. The appeal should be sent to:

                          DuPont Connection
                          PO Box 1407
                          Lincolnshire, IL 60069-1407

Sincerely,

DuPont Connection
Claims and Appeals Group

*EXHIBIT J*

September 2, 2004

DuPont Connection
Pension Claims and Appeals
P.O. Box 1407
Lincolnshire, IL  60069-1407

### Re: Pension Calculation for Basil V Gregorovich

I have received your response to my pension appeal dated July 19, 2004 and by this letter make a second appeal.

The conditions for the appeal that you have outlined in your response are:

- Employee's DuPont earnings (not entire work history) and

- The Social Security law in effect on January 1st of the retirement or termination year

The calculation for my PSSB by the Social Security office is based only on DuPont earnings and was based on the law in effect on Jan 1, 2004. This official government calculation differs from the DuPont calculation that was $ 1863  This difference of $ 88 in PSSB results in an increase of my pension of $ 44 which brings the correct pension amount to $ 4804.

I have met both of the conditions contained in your response. Since the PSSB is based on a Social Security calculation it would seem reasonable that the official calculation made by the government should be accepted.

Please make the adjustment

Yours sincerely

Basil Gregorovich

*EXHIBIT K*


# Board of Benefits and Pensions

June 26, 2006

Mr. Basil V. Gregorovich
7 Zachary Court
Wilmington, DE 19803-3967

Re: Appeal of PSSB Calculation Results

Dear Mr. Gregorovich:

The Board of Benefits and Pensions (the "Board") of E. I. du Pont de Nemours and
Company, Inc. ("DuPont") has completed its review of your appeal regarding the
calculation of the Primary Social Security Benefit in your pension determination.

In connection with your layoff on June 30, 2004 during the corporate CTP program, you
were eligible for Optional Retirement under Section IV-D of the DuPont Pension and
Retirement Plan (the "Plan").

You chose to commence your benefits immediately. Including consideration of your
February 2005 Variable Compensation award, your total retirement benefit was
calculated to be $4,767.00 per month in the form of a Pension Benefit. The following
details the calculation of this benefit:

| | |
|---|---|
| Benefit Service | 35.96389 years |
| Average Monthly Compensation | $ 10,562.00 |
| Primary Social Security Benefit (PSSB) | $ 1,863.00 |
| | |
| Formula A (1:2%) | $ 4,558.21 |
| Formula B (1.5% with PSSB offset) | $ 4,766.26 |
| Formula C (minimum) | $ 1,379.88 |
| Maximum of Three Formulas | $ 4,766.26 |
| Early Commencement Factor | N/A |
| Monthly Benefit at BCD (rounded up) | $ 4,767.00 |

You contend that the Primary Social Security Benefit should reflect the benefit calculated
for your by the Social Security Administration (SSA) of $1,775.00 per month. Based on
that amount as the PSSB, the Plan Formula B benefit would be $4,810.26 (rounded up to
$4,811.00), producing a benefit $44.00 per month greater. Your appeal requests that your
benefit be adjusted to $4,811.00 per month.

Mr. Basil Gregorovich
June 26, 2006
Page 2

We do not have a copy of the statement that you received from the Social Security
Administration, so we don't know how they came up with the result of $1,775.00 per
month. However, in one of your letters you state "…my monthly social security benefit
is $1,775.00 as calculated by the Social Security Administration starting January 14th of
the year 2004, the year in which I am retiring." The SSA calculation appears to be based
on a different determination date from the DuPont Connection calculation -- January 14,
2004 vs. July 1, 2004. You were eligible to commence your Social Security benefits on a
reduced basis as early as April 2000, when you attained age 62. Based on your year of
birth (1938), you became eligible for full (unreduced) benefits at age 65 and 2 months, or
June 2003. Our calculation of your Social Security benefits as of June 2003 comes
within just a few dollars of the $1,775.00 amount you report that Social Security is
paying you.

Regardless of the Social Security Administration's calculations, the Plan benefit is
calculated based on DuPont's calculation of the Social Security Primary Insurance
Amount. It is based on FICA-taxable wages to the extent that such earnings were
associated with DuPont service recognized in computing a benefit under the Plan. Plan
participants may choose to provide a full history of FICA-taxable wages from the SSA,
but DuPont still prepares the PSSB calculation.

Using your DuPont history of FICA-taxable wages, year 2004 law, a June 30, 2004
retirement date, and the SSA's PC-based benefit calculation system ("AnyPIA"), we can
match to the dollar the $1,863.00 result that DuPont Connection had computed.

The calculation provided to you by DuPont Connection was correct. The benefits that
you are currently receiving have been verified against DuPont's pension plan
administration and procedures. The Board finds that there is no basis for the recognition
of a different PSSB calculation. Your appeal for increased pension benefits is therefore
denied.

Please be aware that this review by the Board of Benefits and Pensions concludes your
rights of appeal within DuPont.

Sincerely,

Andrew F. Lesser
DELEGATE OF THE BOARD OF BENEFITS AND PENSIONS

/afl

*EXHIBIT L*

June 14, 2004

DuPont Connection
Pension Claims and Appeals
P.O. Box 1407
Lincolnshire, IL   60069-1407

**Du Pont Pension Plan Documents**

By this letter I request access to the full Du Pont pension plan documents.

I request a location where I can view the entire Du Pont Pension Plan or a copy of the plan. If there is a charge for a copy of the plan and that charge is $ 35 or less please send the document. If the charge would be greater than $ 35 then please inform me what that charge would be.

I can be reached at:          Basil Gregorovich
                              7 Zachary Court
                              Wilmington  DE  19803-3967

                              Phone:  Work:  302-892-0728
                                      Home:  302-764-7882

                              Internet:  gregorov@comcast.net


Yours sincerely


Basil Gregorovich

*EXHIBIT*   *M*

July 15, 2004

DuPont Connection
Pension Claims and Appeals
P.O. Box 1407
Lincolnshire, IL   60069-1407

### Du Pont Pension Plan Documents

      On June 14th I sent a letter requesting access to the Du Pont Pension Plan documents. That letter is attached. I wish to point out that under ERISA guidelines as described in the Du Pont Pension Plan Documents" available on the DuPont Connection Website, pages 27-29 that you are required to give a response within 30 days. You received my request on June 17[th]. If my request is not honored by August 2, 2004 then I will take further action as permitted under the ERISA guidelines.

To repeat my request:

I request a location where I can view the entire Du Pont Pension Plan or a copy of the plan. If there is a charge for a copy of the plan and that charge is $ 35 or less please send the document. If the charge would be greater than $ 35 then please inform me what that charge would be.

I can be reached at:        Basil Gregorovich
                      7 Zachary Court
                      Wilmington DE  19803-3967

                      Phone:  Home:  302-764-7882

                      Internet:  gregorov@comcast.net

Yours sincerely

Basil Gregorovich

৪ ৪ 1

JS 44 (Rev. 11/04)   CLERK U S DISTRICT COURT   **CIVIL COVER SHEET**

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| GREGOROVICH, BASIL V. | E. I. DUPONT DE NEMOURS HOLIDAY, CHARLES O. |

**(b)** County of Residence of First Listed Plaintiff
(EXCEPT IN U.S. PLAINTIFF CASES)

NEW CASTLE COUNTY

County of Residence of First Listed Defendant   NEW CASTLE
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Attorneys (If Known)

MOBLEY, STACEY J.

**II. BASIS OF JURISDICTION**   (Place an "X" in One Box Only)

☐ 1 U.S. Government Plaintiff

☒ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant

☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☒ 1 | Incorporated or Principal Place of Business In This State | ☒ 4 | ☒ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT**   (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☒ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | | | ☐ 900Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | | | |

**V. ORIGIN**   (Place an "X" in One Box Only)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

**VI. CAUSE OF ACTION**

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
ERISA TITLE 29 USC CHAPTER 18
Brief description of cause:
INCORRECT CALCULATION OF PENSION AMOUNT

**VII. REQUESTED IN COMPLAINT:**   ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☐ Yes   ☐ No

**VIII. RELATED CASE(S) IF ANY**   (See instructions):

JUDGE _____   DOCKET NUMBER _____

DATE   June 26, 2008

SIGNATURE OF ATTORNEY OF RECORD   Basil Gregorovich

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

Roch 152465 -RN

AO FORM 85 RECEIPT (REV. 9/04)

United States District Court for the District of Delaware

Civil Action No. _____ 1 _____

# ACKNOWLEDGMENT
## OF RECEIPT FOR AO FORM 85

## *NOTICE OF AVAILABILITY OF A*
## *UNITED STATES MAGISTRATE JUDGE*
## *TO EXERCISE JURISDICTION*

I HEREBY ACKNOWLEDGE RECEIPT OF _____2_____ COPIES OF AO FORM 85.

_____6/26/08_____
(Date forms issued)

X _Basil V Gregorovich_
(Signature of Party or their Representative)

X  BASIL V. GREGOROVICH
(Printed name of Party or their Representative)

Note: Completed receipt will be filed in the Civil Action

OFFICE OF THE CLERK
**UNITED STATES DISTRICT COURT**
DISTRICT OF DELAWARE

Peter T. Dalleo
CLERK

LOCKBOX 18
844 KING STREET
U.S. COURTHOUSE
WILMINGTON, DELAWARE 19801
(302) 573-6170

RE:   C.A.#_____

CASE CAPTION: _Gregorvich_____ v. _E. I. Dupont_____

## ACKNOWLEDGMENT OF RECEIPT FOR F.R.Civ.P. 4

I hereby acknowledge receipt of a copy of Rule 4 (Summons) of the Federal Rules of Civil Procedure, and understand that it is my responsibility to make service of process on defendants in accordance with this rule.

Date Received  _6/26/08_          Signed: _____
by Plaintiff:                                          Pro Se Plaintiff

Date Received  _6/26/08_          Signed: _____
by Clerk's office:                                    Deputy Clerk

Note:  If you received Federal Rule 4 by mail, please sign this receipt and return it to:

Clerk
U.S. District Court
844 N. King Street
Lockbox 18
Wilmington, DE 19801

If applicable,  Rule 4 mailed to plaintiff:

_____
Date mailed

_____
By  Deputy Clerk

cc:  Docketing Clerk

wp\forms\rule4receipt 2-04